Leslie Ann GRABLE *v.* James GRABLE, Jr.

91-273                                    821 S.W.2d 16

Supreme Court of Arkansas
Opinion delivered December 16, 1991

*Lightle, Bebee, Raney, Bell & Hudgins*, by: *Robert Hudgins*, for appellant.

*Paul Petty* and *Robert Meurer*, for appellee.

DONALD L. CORBIN, Justice. Appellant Leslie Ann Grable challenges an order of the White County Chancery Court modifying the child support obligation of appellee James Grable, Jr. We affirm.

The parties were divorced by a decree entered December 7, 1987. The divorce decree granted custody of the Grables' five minor children to Leslie Grable, and ordered James Grable to pay $300 per week in child support. Since entry of the original support

decree, Mr. Grable has accrued support arrearages in excess of $32,000. At the time Mr. Grable filed his petition for modification on January 28, 1991, he was incarcerated at the White County Detention Center for failing to comply with the support payment conditions set out in an August 27, 1990 agreed order of contempt and modification. The August 27, 1990 order had increased Mr. Grable's weekly support obligation to $370 based on his take-home income of $864 per week from his job at Wayne Phillips Trucking Company. The order also directed Mr. Grable to pay a weekly sum of $100 toward his support arrearages.

Mr. Grable's January 28, 1991, petition for modification requested a reduction in his weekly support obligation based on his assertion that he had been "laid off" from his job at Wayne Phillips Trucking Company. On February 1, 1991, the court entered an order finding Mr. Grable in contempt of the August 27, 1990 order. The order conditioned Mr. Grable's release from jail on a cash payment of $2,500 and the establishment of a wage assignment from his new employer. The order further provided that all the provisions of previous child support orders would remain in full force and effect.

The February 1, 1991 order was entered after Mr. Grable had filed his petition for modification, but before the court had held a hearing on this petition. The court did not conduct a hearing on Mr. Grable's petition until March 20, 1991. At the March 20 hearing, Mr. Grable presented evidence regarding his change in employment. Based on this evidence, the chancellor found a change in circumstances existed, and reduced Mr. Grable's weekly child support obligation as of March 22, 1991, to $220 plus a $30 weekly payment toward previous arrearages. The chancellor entered this order on May 8, 1991.

Leslie Grable appeals from the May 8, 1991 order reducing Mr. Grable's child support obligation. Mr. Grable contends that Mrs. Grable's arguments are meritless, and that he should be awarded attorney's fees and costs in conjunction with this appeal. We affirm the order of the chancellor, and deny appellee's request for attorney's fees and costs.

Appellant's first allegation of error is that the reduction of appellee's child support obligation violates Ark. Code Ann. § 9-14-234(b) (Repl. 1991). Section 9-14-234(b) provides in perti-

nent part:

> (b) The court may not set aside, alter, or modify any decree, judgment, or order which has accrued unpaid support *prior to the filing of the motion.* [Emphasis supplied.]

In the instant case, appellee James Grable petitioned for modification of his child support obligation on January 28, 1991. At that time, Mr. Grable owed appellant Leslie Grable approximately $33,000 in support arrearages. Mrs. Grable contends that because Mr. Grable had accrued unpaid support, section 9-14-234(b) precluded him from seeking *any* modification. We disagree.

In *Sullivan* v. *Edens*, 304 Ark. 133, 801 S.W.2d 32 (1990), this court interpreted section 9-14-234 as an effort by the Arkansas Legislature to comply with funding qualification regulations set out by the United States Department of Health and Human Services. The pertinent regulation in the instant case is codified at 45 C.F.R. § 303.106 (1989) under the section entitled "Procedures to Prohibit Retroactive Modification of Child Support." With respect to state regulations regarding modification of child support orders, the federal regulation provides as follows:

> (a)   The State shall have in effect and use procedures which require that any payment or installment of support under any child support order is, on and after the date it is due:
>
> . . . .
>
> (3)   Not subject to retroactive modification by such State or by any other State except as provided in paragraph (b) of this section.
>
> (b)   The procedures referred to in paragraph (a)(3) of this section may permit modification with respect to any period during which there is pending a petition for modification, but only from the date that notice of such petition has been given, either directly or through the appropriate agent, to the obligee or (where the obligee is the petitioner) to the obligor.

The paragraph (b) exception to the general federal

regulation prohibiting retroactive modification of child support orders is precisely the condition for which the statutory language "prior to the filing of the motion" provides. We believe section 9-14-234(b)'s language indicates our legislature's intent to incorporate both the general federal rule regarding modification and the exception to this rule. Consequently, we hold that section 9-14-234(b) prohibits only the modification of child support orders which retroactively affect the time period before the petition for modification was filed and proper notice given to the opposing party.

In the instant case, the order entered on May 8, 1991, reduced appellee's child support obligation as of March 22, 1991. The order did not modify any child support obligations owed by appellee prior to March 22, 1991. In fact, the May 8 order specifically stated that appellee's arrearage remained at $32,901.46 and was accruing interest at an annual rate of 10%. Given that appellee filed his petition for modification on January 28, 1991, the order reducing appellee's child support obligations as of March 22 did not violate section 9-14-234(b) since this order affected only obligations that were antecedent to the filing of appellee's petition.

Appellant's second argument for reversal is that the chancellor abused his discretion in reducing appellee's child support obligation based on a change of circumstances. On January 28, 1991, appellee petitioned the court to modify his support obligation because he had been "laid off" at his place of employment. Appellee's petition was prompted by the chancellor's January 25, 1991 order finding appellee in contempt for nonpayment of child support payments and ordering him incarcerated until his arrearages were purged. On February 1, 1991, the chancellor entered an order specifically finding, among other things, that appellee should be released from incarceration upon paying $2,500 and stating that the provisions of previous orders regarding child support "shall remain in full force and effect." The order entered on August 27, 1990 had established appellee's weekly obligation at $370 plus payments of $100 applied against arrearages. Appellant argues that because the February 1 order was subsequent to appellee's petition for modification, the chancellor was precluded from modifying appellee's support obligation based on a change of circumstances that occurred prior to entry of the

February 1 order. We disagree.

Appellee actually filed his petition to reduce his child support obligation during the time he was cited and found in contempt for failure to pay child support. Under these circumstances, he was unable to seek to have the August 27, 1990 child support order modified. *Gilmore* v. *Gilmore*, 239 Ark. 1140, 396 S.W.2d 936 (1965). However, after appellee paid $2,500, he was released from jail. At that time, he appropriately sought a reduction in his child support obligation at a hearing on March 20, 1991, which was his first opportunity to show he had been laid off from his employment and was no longer able to pay the previously ordered $470 weekly amounts. Appellant responded by requesting the chancellor to find appellee in contempt for additional arrearages. At the March 20 hearing, appellee testified that he left his previous place of employment at Wayne Phillips Trucking Company because the company was facing bankruptcy. Appellee further testified that his weekly income at his new place of employment averaged between $350 and $400. The chancellor relied on the appellee's evidence presented at the hearing in reducing appellee's weekly obligation to $220.

In sum, while appellee had obtained his new job at the time the February 1 order was entered, he could not have a hearing to present evidence supporting his petition until March 20, 1991. Based upon these facts and circumstances, we cannot say the chancellor erred in reducing appellee's weekly child support obligation and setting the amount he did.

Appellant's final argument is that the chancellor erred in granting affirmative relief to appellee. Appellant argues that the chancellor should have denied affirmative relief to the appellee because the appellee came to the court with "unclean hands" and because the appellee's change in employment was voluntary.

Appellant's "unclean hands" argument is based on the equitable maxim that he who seeks equity must do equity. In this case, appellant argues that because appellee had failed on multiple occasions to abide by court orders, appellee was estopped from seeking modification of his support obligation. We believe that the repeated contemptuous conduct of appellee may well have justified a refusal by the chancellor to afford affirmative relief to appellee. However, the purpose of invoking the clean

hands doctrine is to protect the interest of the public on grounds of public policy and for the protection of the integrity of the court. 30 C.J.S. *Equity* § 93 (1965); *Roark v. Roark*, 34 Ark. App. 250, 809 S.W.2d 822 (1991). Consequently, application of the doctrine depends on the chancellor's discretion as to whether the interests of equity and justice require application of the doctrine. 30 C.J.S. *Equity* § 90 (1965). As the chancellor was in the better position to determine the facts and weigh the competing interests in this case, we cannot say that he abused his discretion in declining to estop appellee from seeking modification of his support obligation.

Appellant based her final challenge to the chancellor's grant of affirmative relief on the fact that appellee's change in employment was voluntary. Appellant relies on this court's recognition in *Grady v. Grady*, 295 Ark. 94, 747 S.W.2d 77 (1988), of a trial court's prerogative to impute income to a supporting spouse who voluntarily changes employment based on that party's earning capacity. However, in *Grady* we also cautioned that a trial court's decision on whether to impute income must be based on the facts and circumstances of each case because situations exist where income reductions are reasonable and justifiable. *Id.* at 98, 747 S.W.2d at 79.

In the instant case, appellee testified that he left his previous employment because the company was facing bankruptcy. He also testified that while his new employment was substantially similar to his former job, his current weekly income averaged only $350 to $400. After hearing appellee's testimony, the chancellor expressed his cognizance of the *Grady* case, yet stated "the Court also has to be somewhat realistic in setting support as to what someone can or cannot do." The chancellor went on to summarize appellee's testimony regarding the financial condition at appellee's former place of employment. Based upon the appellee's testimony concerning his weekly income at his current place of employment, the chancellor reduced appellee's weekly support obligation of $220.

This court has held that the amount of child support lies within the sound discretion of the chancellor, and we will not disturb the chancellor's finding absent an abuse of discretion. *Scroggins v. Scroggins*, 302 Ark. 362, 790 S.W.2d 157 (1990);

*Grady, supra.* Given the chancellor's explicit explanation in this case regarding his perception of both the law and the facts necessitating modification of appellee's support obligation, we cannot say that the chancellor's decision constituted an abuse of discretion.

The appellee has asked this court to award attorney's fees and costs in conjunction with the appeal. Ark. Sup. Ct. R. 24(d) provides that in chancery cases the court may assess costs according to the merits of the case. Appellee argues that he is entitled to costs and attorney's fees because appellant's arguments are "clearly meritless." We disagree.

While this court does not agree with the arguments advanced by appellant, we cannot say that her arguments are "clearly meritless." This court has not previously addressed the precise arguments raised by appellant, and no evidence indicates that appellant brought her appeal for any improper purpose.

In equitable actions, costs on appeal are largely within the sound discretion of the reviewing court. 20 C.J.S. *Costs* § 159 (1965). In exercising our discretion to determine whether costs or attorney's fees are appropriate, this court has also indicated that it will consider the economic status of the parties. *See LeFevers* v. *LeFevers*, 240 Ark. 992, 403 S.W.2d 65 (1966). Mrs. Grable is a mother of five who works forty hours a week in a grocery store for a weekly take-home income of $154.16. Based on Mrs. Grable's economic status and our disagreement with appellee's contention regarding the merits of Mrs. Grable's arguments, we decline to award costs and attorney's fees in this action.

Affirmed.