Michele Kelly HILL *v.* James Edward KELLY III

06-83                                                          243 S.W.3d 886

Supreme Court of Arkansas
Opinion delivered November 30, 2006

---

·*Gean, Gean & Gean,* by: *Roy Gean, III,* for appellant/cross-appellee.

*Pryor, Robertson & Barry, PLLC,* by: *John Beasley* and *Dusti Miller,* for appellee/cross-appellant.

JIM GUNTER, Justice. This appeal arises from an order of the Sebastian County Circuit Court finding a material change in circumstances to justify a modification of child support owed by appellee, James Edward Kelly, III, to appellant, Michele Kelly Hill, for their three children. On appeal, Hill raises three allegations of error, and Kelly brings a cross-appeal. We affirm the circuit court's order as modified.

A recitation of the facts are contained in the first appeal, *Kelly v. Kelly,* 341 Ark. 596, 19 S.W.3d 1 (2000). The Kellys have three children. After the birth of their third child, Hill chose to stay home with their children. In 1998, Hill filed for divorce. Hill and Kelly negotiated and executed a property-settlement agreement resolving all marital-property issues. A hearing was held on August 6, 1999, and at the conclusion of the hearing, the chancellor granted Hill an absolute divorce and set child support in the amount of $6,000 per month consistent with the parties' property-settlement agreement. The court also awarded additional child support in the amount of 25% of the net of any bonus that Kelly received. The chancellor entered the divorce decree on August 25, 1999.

In *Kelly, supra,* Kelly challenged the trial court's ability to order payments based upon the bonus, which he considered as indefinite, conditional income that is contingent upon the profit-

ability of the clinic in the future. *Id.* at 600, 19 S.W.3d at 4. We agreed, interpreting the language of section III(b) of Administrative Order Number 10 and holding

> [t]here is no history of bonus income, and the trial court acknowledged the uncertainty of whether Kelly would even qualify for a bonus in the foreseeable future given the business expense calculation that would be required. We therefore reverse and remand for entry of an order consistent with this opinion.

*Id.* at 600, 19 S.W.3d at 4.

On February 6, 2003, Hill, who had custody of all three children, filed a motion for increase in child support and motion to enforce child custody, support, separation, and property-settlement agreement. In her motion for increase in child support, Hill alleged a material and substantial change in circumstance that would justify a modification of the child-support payment of $6,000. In her motion to enforce child custody, support, separation, and property-settlement agreement, she averred that Kelly refused to divide their retirement accounts in accordance with their agreement and assessed a hypothetical tax and penalty on the division of the accounts.

On February 24, 2003, Kelly filed responses to Hill's motion, affirmatively pleading that Hill was barred, among other defenses, by the doctrine of res judicata, estoppel, and laches. He filed a cross-petition for decrease in child support, requesting the consideration of adjusting child support in the event that he was awarded custody of one or more of the minor children. In that cross-petition, he averred that his income for 2002 decreased and that he was entitled to a reduction in child support under the Family Support Chart. He also filed a cross-petition, alleging that he paid Hill one-half of the accounts per their agreement. On July 11, 2003, the circuit court ordered that, based upon an attorney ad litem's recommendation and interviews with the two oldest children, the youngest child remain in Hill's custody, and Kelly was awarded custody of the two oldest children. The circuit court reduced Kelly's support payment to $3,600 per month for obligations to his youngest child.

On August 12, 2003, Hill filed an amended motion for increase in child support and an amended motion to enforce child custody, support, separation, and property-settlement agreement. She also filed a motion for counseling for the three children. In her

motion for increased child support, she argued that the entry of the July 11, 2003, order justified a modification in child support. In her motion to enforce child custody, support, separation, and property-settlement agreement, she maintained that Kelly attempted to assess a hypothetical tax and penalty on various accounts and that the accounts had not been equally divided. In her motion for counseling, she requested that Kelly pay for counseling for the three children to assist in the change of their environment. Kelly responded on August 27, 2003.

Hill filed a motion to require Kelly to comply with Act 337 of 2003 on September 26, 2003, requesting the circuit court to order Kelly to provide income information for the previous calendar year, as provided by Act 337. On October 15, 2003, Kelly responded, arguing that Hill breached their confidentiality agreement by disclosing tax returns to third parties and by making remarks that he was guilty of tax fraud in the presence of their children. He requested that the court enter a protective order, impose sanctions against Hill, and order attorneys' fees to be paid by Hill. In the motion, he cross-petitioned the circuit court to hold Hill in contempt of court for her alleged refusal to comply with visitation orders. On January 20, 2004, the circuit court ordered Hill to produce 2002 tax returns, to refrain from disclosing the contents of those tax returns, and to discontinue discussing their financial affairs in the presence of the children. The circuit court denied Kelly's petition for contempt of court and set a summer visitation schedule for 2004.

The circuit court held a hearing on May 27, 2005. On October 17, 2005, the circuit court entered an order, ruling that the motion for counseling was dismissed, and found that there had been a material change in circumstances that justified a modification in child-support payments required of Kelly in accordance with Ark. Code Ann. § 9-14-107(a)(1) (Supp. 2005). The circuit court found from Administrative Order Number 10 the applicable rates to be used to calculate child support to be 25% for three children, 21% for two children, and 15% for one child because Kelly's income exceeded the chart. The court further found the effective date of the motion for changing custody to be the effective date for calculating support. Ultimately, the court allowed Hill 25% of Kelly's income from the date of the motion until custody was changed with the two older children going to Kelly and the youngest child remaining with Hill. From the date of

the change of custody, the court allowed a 21% credit against income to Kelly before calculating the support due to Hill for the youngest child, and then applied 15% to Kelly's income as reduced by the credit. Finally, the court required Hill to contribute to the support of the two children in Kelly's custody by calculating the support based upon Hill's imputed minimum-wage income. The net result included a lump-sum, accrued-support balance of $39,198 due to Hill, as well as the current support amount of $4,653 per month to be used prospectively. The circuit court also found that Kelly was entitled to a credit of $4,540 against a child-support balance of $39,198 for paying orthodontic expenses. Kelly's claims for contribution to the children's college fund and for reimbursement of travel expenses were denied. The court also ruled that Kelly would continue to claim the three children as dependants for income-tax purposes. The circuit court further denied Kelly's cross-petition to receive a refund of a portion of Hill's alimony. After the circuit court's order was entered, Hill timely filed her notice of appeal on October 28, 2005. Kelly filed a cross-appeal on November 1, 2005. From the October 17, 2005, order, both parties bring their appeals.

For her first point on appeal, Hill argues that the circuit court erred in adjusting Kelly's income for the financial support of the two oldest children in determining the amount of support owed by Kelly to Hill for the youngest child. Specifically, Hill contends that the circuit court's reducing Kelly's net income by 21% was a deviation from the support guidelines set forth in Administrative Order Number 10. She asserts that, in addition to the 21% reduction for his financial support for the two oldest children, Kelly is credited with the amount of Hill's support for the children in Kelly's custody. Further, she makes the argument that she did not receive the same credit for the financial support of her youngest child; that there was no evidence presented that would support any need for an adjustment; that the circuit court's adjustment is based upon "the erroneous finding that 'the father has contributed all of the funds to support the two children in his custody;' " and that the allocated reduction of 21% of Kelly's net income has no bearing on what is spent on the two children. In response, Kelly argues that the circuit court's adjustment of his child-support obligation for their youngest child was not in error. Specifically, he contends that the circuit court's rulings comply with Administrative Order Number 10.

Our standard of review for an appeal from a child-support order is de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Ward v. Doss*, 361 Ark. 153, 205 S.W.3d 767 (2005). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Akins v. Mofield*, 355 Ark. 215, 132 S.W.3d 760 (2003). We give due deference to the trial court's superior position to determine the credibility of the witnesses and the weight to be given their testimony. *Id.* In a child-support determination, the amount of child support lies within the sound discretion of the trial court, and the lower court's findings will not be reversed absent an abuse of discretion. *Id.* However, a trial court's conclusions of law are given no deference on appeal. *Id.*

It is axiomatic that a change in circumstances must be shown before a court can modify an order for child support. *Evans v. Tillery*, 361 Ark. 63, 204 S.W.3d 547 (2005). In addition, the party seeking modification has the burden of showing a change in circumstances. *See id.* In determining whether there has been a change in circumstances warranting adjustment in support, the court should consider remarriage of the parties, a minor reaching majority, change in the income and financial conditions of the parties, relocation, change in custody, debts of the parties, financial conditions of the parties and families, ability to meet current and future obligations, and the child-support chart. *See id.* We have made it clear that a finding that a material change in circumstances has occurred is subject to a clearly-erroneous standard of review. *See id.*

The Arkansas General Assembly has provided that the appropriate method for determining the amount of child support to be paid by the noncustodial parent is by reference to a family-support chart. *Davis v. Bland*, 367 Ark. 210, 238 S.W.3d 924 (2006). Arkansas Code Annotated § 9-12-312(a)(2) (Repl. 2002) states:

> In determining a reasonable amount of support, initially or upon review to be paid by the noncustodial parent, the court shall refer to the most recent revision of the family support chart. It shall be a rebuttable presumption for the award of child support that the amount contained in the family support chart is the correct amount of child support to be awarded. Only upon a written finding or specific finding on the record that the application of the support

chart would be unjust or inappropriate, as determined under established criteria set forth in the family support chart, shall the presumption be rebutted.

The issue involves the circuit court's calculations in reaching its modification of Kelly's child-support payments. The authority for the circuit court's modification of child support is found at Ark. Code Ann. § 9-14-107, which provides in pertinent part:

> (a)(1) A change in gross income of the payor in an amount equal to or more than twenty percent (20%) or more than one hundred dollars ($100) per month shall constitute a material change of circumstances sufficient to petition the court for modification of child support according to the family support chart after appropriate deductions.

Section I of Administrative Order No. 10, which addresses the authority and scope of the circuit court, sets forth further guidelines for child-support modification orders. Section I provides in pertinent part:

> All orders granting or modifying child support (including agreed orders) shall contain the court's determination of the payor's income, recite the amount of support required under the guidelines, and recite whether the court deviated from the Family Support Chart. If the order varies from the guidelines, it shall include a justification of why the order varies as may be permitted under Section V hereinafter. It shall be sufficient in a particular case to rebut the presumption that the amount of child support calculated pursuant to the Family Support Chart is correct, if the court enters in the case a specific written finding within the Order that the amount so calculated, after consideration of all relevant factors, including the best interests of the child, is unjust or inappropriate.

Under Administrative Order Number 10, "income" means "any form of payment . . . less proper deductions for: . . . (4) [p]resently paid support for other dependents by court order." Ark. Sup. Ct. Admin. Order No. 10, § II(4).

Section III of Administrative Order Number 10 allows the circuit court to consider the payor's income that exceeds the family-support chart. In our per curiam opinion, *In re Guidelines for Child Support*, 314 Ark. App'x 644, 647, 863 S.W.2d 291, 294

(1993) (per curiam), we stated: "For self-employed payors, support shall be calculated based on last year's federal and state income tax returns and the quarterly estimates for the current year. Also the court shall consider the amount the payor is capable of earning or a net worth approach based on property, life-style, etc." *Id.* When the payor's income exceeds the amount stated in the chart, then the following percentages are established: 15% for one dependent; 21% for two dependents; and 25% for three dependents. Ark. Sup. Ct. Admin. Order No. 10, § III(b). The chart is structured so that the amount of support per child decreases in proportion to the number of added dependents. *Barnes v. Barnes,* 311 Ark. 287, 843 S.W.2d 835 (1992).

Further, the circuit court has the authority to make any deviations to the chart under the following provision:

> b. *Additional Factors.* Additional factors may warrant adjustments to the child support obligations and shall include:

> 7. The support required and given by a payor for dependent children, even in the absence of a court order . . . [.]

Ark. Sup. Ct. Admin. Order No. 10, § V.

 Based upon these directives from Administrative Order Number 10, we turn to the circuit court's order. Under Section I, the court's order "shall contain [1] the court's determination of the payor's income, [2] recite the amount of support required under the guidelines, and [3] recite whether the court deviated from the Family Support Chart." Ark. Sup. Ct. Admin. Order No. 10, § I. First, the circuit court's order in this case contains substantial calculations of Kelly's income based upon previous tax returns. We have said that, based upon the child-support guidelines for self-employed payors, the formula for calculating child support is based on the last year's federal and state income-tax returns and the quarterly estimates for the current year. *See In re Guidelines for Child Support, supra.* Here, the circuit court, after reviewing the income-tax returns for 2001, 2002, and 2003, determined Kelly's adjusted gross income; deducted income attributable to his wife through their business, Northwest Arkansas Collection and Billing Services, Inc.; figured the amount of income from the business attributable to Kelly; and determined the

monthly averages of child-support payments for 2003 and for 2004 to be $35,605 and $41,384, respectively. Pursuant to Ark. Code Ann. § 9-14-234 (Supp. 1995), the circuit court properly ruled that these child-support modifications were set on February 6, 2003, the effective date of the filing of the motion to modify. We conclude that, in figuring Kelly's income, the circuit court's child-support modifications properly begin on this date.

■ Second, under section I of Administrative Order Number 10, the circuit court's order "recite[s] the amount of support required under the guidelines." Because Kelly's income exceeded the child-support chart levels, the circuit court applied the child-support guidelines' percentages found in section III(b). Here, the circuit court properly ruled that, when the income exceeds the chart, the amount of support is 25% for the three children, 21% for two children, and 15% for one child. *See* Administrative Order No. 10, Section III(b). Thus, the circuit court properly calculated Kelly's obligation by calculating 21% of Kelly's adjusted income, noted above as $35,605 and $41,384, to arrive at a logical support allowance for the two children in his care. Kelly's income was adjusted as follows:

| Period | Ave. Mo. Income | Rate | Mo. Support | Adj. Income |
|---|---|---|---|---|
| 7-11-03 to 1-1-04 | $35,605 | .21 | $7,477 | $28,128 |
| 1-1-04 to 10-1-05 | $41,384 | .21 | $8,691 | $32,693 |

Next, the court applied the rate of 15% to calculate the support owed to Hill for the youngest child. The calculations are as follows:

| 7-11-03 to 1-1-04 | | 1-1-04 to 10-1-05 | |
|---|---|---|---|
| | $28,128 | | $32,693 |
| Support for one child | x .15 | Support for one child | x .15 |
| Monthly support | $ 4,219 | Monthly support | $ 4,904 |
| 5.67 months (7-11-03 to 1-1-04) | x 5.67 | 21 months (1-1-04 to 10-1-05) | x 21 |
| Accrued support | $23,921 | Accrued support | $102,924 |

Based upon these calculations, we cannot say that the circuit court was clearly erroneous.

Third, under section I of Administrative Order Number 10, the circuit court's order must "recite whether the court deviated

from the Family Support Chart." Here, the crux of Hill's argument is that these 21% and 15% deductions amounted to deviations from the support guidelines enumerated in Administrative Order Number 10. However, this argument is a mischaracterization of the circuit court's calculations.

■ Here, the circuit court's order is replete with specific calculations, as well as explanations of those calculations with citations to Administrative Order Number 10, that fully explain how the court reached those figures. The court allowed credit to Kelly for support of the two children in his custody before calculating support for the one child in Hill's custody. The circuit court made the following ruling:

| | | |
|---|---|---|
| Total support accrued: | $172,924 | (using the rates set out above) |
| Support actually paid: | -127,034 | |
| Mother's support: | -6,694 | (imputed to Hill for two older children based upon a minimum-wage income) |
| Balance owed: | $39,198 | |

After figuring these calculations, the circuit court ruled that the "net amount of child support owed by the father through October 1, 2005 is $39,198.00." From these calculations, the circuit court set prospective support to continue at the last rate of $4,904, less the amount of $251, which was a minimum-wage imputation attributed to Hill for support of the one child, and ordered Kelly's monthly child-support obligation to be $4,653. These calculations appear to follow Administrative Order Number 10. Therefore, based upon our well-established standard of review, as well as Administrative Order Number 10, we hold that the circuit court properly modified Kelly's child-support obligations for the Kelly children. Accordingly, we affirm the circuit court's rulings on this point.

■ For her second point on appeal, Hill argues that the circuit court erred in awarding Kelly a credit of $4,540, against child-support arrearage owed, for all orthodontic expenses paid by Kelly. Specifically, she contends that the offset should have been half the amount of $4,540, or $2,270, as it was listed in an exhibit presented by Kelly at trial. In response, Kelly concedes this point, noting that all medical, dental, and orthodontic expenses incurred by the Kelly children are to be equally divided between Kelly and

Hill. Here, both parties agree that the settlement agreement provided that the "parties shall be equally responsible for any unreimbursed medical, dental, orthodontic, counseling, prescription drug and eyeglass expenses." Therefore, we hold that the circuit court erred in awarding Kelly the $4,540 credit for orthodontic expenditures. Accordingly, we modify the circuit court's order to reflect a credit to Hill of $2,270 for those expenses.

For her third point on appeal, Hill argues that the circuit court erred in ruling that the three children shall be considered as Kelly's dependents for income-tax purposes. Specifically, Hill contends that she should have been allowed the tax exemption for the youngest child because he was in her custody. Hill asserts that this ruling deviates from the Arkansas Child Support Guidelines. Kelly responds, arguing that the circuit court was correct in its ruling because Hill has no income and that she "receives no benefit from claiming [her youngest child] as a dependent for income tax purposes." Kelly further contends that allowing Hill to claim that child as a dependent benefits Hill's husband, Steve Hill.

The circuit court has the authority to allocate dependents for tax purposes under Administrative Order Number 10, which provides in relevant part:

> f. *Allocation of Dependents for Tax Purposes.* Allocation of dependents for tax purposes belongs to the custodial parent pursuant to the Internal Revenue Code. However, the Court shall have the discretion to grant dependency allocation, or any part of it, to the noncustodial parent if the benefit of the allocation to the noncustodial parent substantially outweighs the benefit to the custodial parent.

Ark. Sup. Ct. Admin. Order No. 10, § III(b).

In *Dumas v. Tucker,* 82 Ark. App. 173, 119 S.W.3d 516 (2003), the court of appeals held that an award of a tax exemption to a non-custodial parent results in a deviation from the family-support chart and that the trial court erred in making such an award without providing the findings required by Ark. Code Ann. § 9-12-312(a)(2). The court of appeals further held that the circuit court made its rulings without weighing the benefits to the parties as required by Administrative Order Number 10, section III(f). *See also Fontenot v. Fontenot,* 49 Ark. App. 106, 898 S.W.2d 55 (1995). The court of appeals cited with approval the case of *Niederkorn v.*

*Niederkorn*, 616 S.W.2d 529, 533 (Mo. Ct. App. 1981), that "an award of a tax exemption to one party is nearly identical in nature to an order that the other party pay as child support a sum equal to the value of the exemption." *Freeman v. Freeman*, 29 Ark. App. 137, 141, 778 S.W.2d 222, 224 (1989).

With this precedent in mind, we turn to the present case. Here, the circuit court made the following ruling regarding the tax-exemption issue:

> 24. That the defendant-father shall continue to claim the three children as dependents for income tax purposes. The court finds that the father is responsible for all of the support of the two children in his custody and that the net amount of support of $4,653.00 per month for the child in the mother's custody is more than 50% of the support required to maintain the child in her lifestyle.

■ Here, the circuit court's ruling allows Kelly to claim the youngest child as a dependent and receive a tax exemption. Under *Fontenot, supra,* this award to a noncustodial parent constitutes a deviation from the child-support chart. However, under *Dumas, supra,* the circuit court made findings, required by Ark. Code Ann. § 9-12-312(a)(2), and, pursuant to Administrative Order Number 10, section III(f), the court determined whether the benefit of the allocation to the noncustodial parent substantially outweighed the benefit to the custodial parent. The circuit court found that, by agreement of the parties, "the mother stopped working prior to the birth of the last child and has not been employed since that date." Further, the circuit court found that the "net amount of support of $4,653.00 per month for the child in the mother's custody is more than 50% of the support required to maintain the child in her lifestyle." Based upon these rulings, the circuit court weighed the benefits to Kelly and Hill, particularly in light of the fact that Kelly had a substantial income and Hill had no current income due to her unemployed status. For these reasons, we cannot say that the circuit court erred on this point.

For his first point on cross-appeal, Kelly argues that the circuit court's decision to retroactively award Hill an increase in child support was clearly against the preponderance of the evidence.

■ Retroactive modification of a court-ordered child-support obligation may only be assessed from the time a petition for modification is filed. *See* Ark. Code Ann. § 9-14-234 (Supp.

1995); *Grable v. Grable*, 307 Ark. 410, 821 S.W.2d 16 (1991). Here, the circuit court ruled that Kelly's initial child-support obligation of $6,000 per month was based upon an annual income of $288,000. However, the circuit court further ruled that Kelly's adjusted gross income was $753,834, $795,746, and $856,061 for the years 2001, 2002, and 2003, respectively. Thus, the circuit court, in reviewing Kelly's adjusted gross income for the years 2001 through 2003, in light of the initial finding of $288,000, made the adjustments to reflect the significant increase in Kelly's income since the initial ruling. Based upon our standard of review, we hold that the circuit court did not err.

For his second point on cross-appeal, Kelly argues that the circuit court erred in increasing his income because of income earned by his wife, Pamela Kelly. Specifically, he contends that the circuit court disregarded evidence and erred in taking income from Pamela Kelly and attributing it to him. In response, Hill argues that the circuit court correctly increased Kelly's income because of income earned by his current wife. Hill asserts that the circuit court's inclusion of her income of $66,000 was not clearly erroneous.

In the present case, the circuit court made the following relevant finding:

> 8. The defendant's wife, Pam Kelly, receives a substantial annual income as 50% owner and manager of a business, Northwest Arkansas Collection and Billing Services, Inc. The defendant is the owner of the other 50% and does not receive an income from the business. The primary client of the business is the defendant's medical practice, Western Arkansas Plastic and Reconstruction Surgery Center. Dr. Kelly and Pam Kelly file a joint income tax return and all of Pam Kelly's income from the billing business is reported on the joint return. Randy Philpot, the defendant's accountant testified that if some of the billing income was deducted from Pam Kelly and attributed to Dr. Kelly there would not be any change in their tax liability. Mr. Philpot conceded that attributing all of the billing income to Pam Kelly would reduce Dr. Kelly's income for child support purposes. The plaintiff's accountant, Ken Kincade, testified that a reasonable salary for an office manager in Fort Smith would be $47,644.00. Pam Kelly testified that the monthly compensation she receives from the billing company is the sum of $5,500.00 or $66,000.00 annually. The Court finds that the sum of $66,000.00 is a reasonable annual salary for the management of the

billing company and that any income from the billing company in excess of $66,000.00 is considered by the court as a distribution of income to the owners based on their ownership percentage of 50% each ... [.]

The circuit court determined Pam Kelly's billing income minus a $66,000 salary for a total distribution amount. From that amount, the circuit court determined 50% to represent Kelly's share. Kelly's respective 50% shares for 2001, 2002, and 2003 were $66,858, $39,565, and $7,792, respectively.

■ We agree with the circuit court's ruling on this issue. Here, the circuit court considered an increase in the amount of income from the billing company attributable to Kelly rather than Hill. Contrary to his argument in his cross-appeal, the circuit court considered Pamela Kelly's salary only in the context of computing Kelly's amount of income from Northwest Arkansas Collection and Billing Services, Inc., of which he owns one-half. Therefore, this increase constituted a material change in circumstance, and based upon our standard of review, we hold that the circuit court was not clearly erroneous on this point.

For his last point on cross-appeal, Kelly argues that the circuit court erred in imputing a minimum-wage salary to Hill. Specifically, Kelly contends that she "enjoys a very comfortable lifestyle and has an education and work history which is not consistent with a minimum wage worker." In response, Hill asserts that the circuit court properly imputed a minimum-wage income to her, as she is an unemployed payor.

Section III(d) of Administrative Order 10 provides:

> *Imputed income.* If a payor is unemployed or working below full earning capacity, the court may consider the reasons therefor. If earnings are reduced as a matter of choice and not for reasonable cause, the court may attribute income to a payor up to his or her earning capacity, including consideration of the payor's life-style. Income of at least minimum wage shall be attributed to a payor ordered to pay child support.

In *Barnes v. Barnes*, 311 Ark. 287, 843 S.W.2d 835 (1992), we upheld the chancellor's order directing the appellant to pay the minimum chart amount for retroactive child support where the

trial judge recognized that there was no evidence of appellant's weekly take-home pay for the relevant time period. Finding no error or abuse of discretion, we stated that the "[c]hancellor simply set the support at the minimum level required of an unemployed person." *Barnes*, 311 Ark. at 301, 843 S.W.2d at 842.

Here, citing section III(d), the circuit court found that Hill stopped working after the birth of the youngest child by agreement of the parties. The court further found that, although she had a college degree with a former job in pharmaceutical sales, "there was no evidence presented as to her present earning capacity." For those reasons, the circuit court imputed to Hill a minimum-wage income for child support for the two older children in the amount of $6,694.

■ We cannot say that this ruling was in error. It appears that Kelly did not present evidence as to Hill's lifestyle or earning capacity. Because there was no evidence presented as to Hill's current earning capacity, we hold that the circuit court properly imputed a minimum-wage income to Hill. Accordingly, we affirm the circuit court's ruling on this issue.

Affirmed as modified.

IMBER and DICKEY, JJ., dissent.

ANNABELLE CLINTON IMBER, Justice, dissenting. For her first point on appeal, Hill argues that the circuit court erred when it adjusted Kelly's income for the financial support of their two oldest children in determining the amount of support Kelly owed Hill for the youngest child. She specifically contends that the circuit court's reduction of Kelly's net income by 21% was a deviation from the support guidelines set forth in Administrative Order No. 10. I agree.

Under the plain language of Administrative Order No. 10, income is defined under Section II:

> Income means any form of payment, periodic or otherwise, due to an individual, regardless of source, including wages, salaries, commissions, bonuses, workers' compensation, disability, payments pursuant to a pension or retirement program, and interest *less proper deductions* for:

1. Federal and state income tax;

2. Withholding for Social Security (FICA), Medicare, and railroad retirement;

3. Medical insurance paid for dependent children; and

4. *Presently paid support for other dependents by court order.*

(Emphasis added.) Thus, in determining income for child-support purposes under section II, only "presently paid support for other dependents by court order" is properly deductible. Under section III(b), when the payor's income exceeds that shown on the family support chart, then certain percentages "of the payor's monthly income as defined in Section II" should be used to set and establish the amount of child support. The relevant percentages in the instant case are 15% for one dependent; 21% for two dependents, and 25% for three dependents. As Kelly is a self-employed payor, support must be calculated based on "the last two years' federal and state income tax returns and quarterly estimates for the current year." *See* Ark. Sup. Ct. Admin. Order No. 10, § III(c).

The circuit court complied with Sections II and III of the administrative order when it determined Kelly's monthly averages for child-support purposes to be $35,605 for 2003 and $41,384 for 2004. It was at this point, according to the majority, that the court deducted 21% of Kelly's income from the monthly averages noted above, "to arrive at a logical support allowance for the two children in his care." The court then applied the rate of 15% to calculate the child support Kelly owed to Hill for the youngest child in her custody. The majority states that such a calculation "appear[s] to follow Administrative Order Number 10." I disagree.

The majority apparently relies upon the following provision set forth in section V:

V. Deviation Considerations

b. Additional Factors.

Additional factors may warrant adjustments to the child support obligations and shall include:

. . . .

7. The support required and given by a payor for dependent children, even in the absence of a court order;"

This provision expressly states that all of the factors listed under section V are "Deviation Considerations"; that is, matters to be considered by the court in determining whether a deviation is appropriate. Thus, the circuit court's adjustment of Kelly's income for the financial support of the two oldest children in his care was in fact a deviation from the support guidelines under Administrative Order No. 10. As support for the adjustment to Kelly's monthly average income, the circuit court cited section V(b)(7) of the administrative order, as well as its finding that "the father has contributed all of the funds to support the two children in his custody."

Such circular reasoning does not, in my view, satisfy the requirement that the court set forth a justification for "why the order varies as may be permitted under Section V." Ark. Sup. Ct. Admin. Order No. 10, § I. To merely cite the provision that authorizes a deviation, i.e. section V, does not begin to answer the question "Why?" Similarly, to say that the father contributes all of the funds to support the children in his custody is inconsistent with the court's decision to impute a minimum wage income to Hill and then to assess her with child support for those two children.

For the above stated reasons, I respectfully dissent.

DICKEY, J., joins this dissent.