2009 Ark. App. 654

**Michael A. HAYES, Appellant,**

v.

**Sandra L. OTTO, Appellee.**

**No. CA 08–1486.**

Court of Appeals of Arkansas.

Oct. 7, 2009.

Rehearing Denied Nov. 18, 2009.

Michael A. Hayes, pro se appellant.

Dodds, Kidd & Ryan, by: David W. Kamps, Little Rock, for appellee.

ROBERT J. GLADWIN, Judge.

Appellant Michael Hayes brings this pro se appeal from the order filed on August 12, 2008, by the Pulaski County Circuit Court, modifying child support for the parties' two children. The order was entered following this court's opinion, *Hayes v. Otto*, CA 07–15, 2007 WL 3171950 (Ark.Ct.App. Oct. 31, 2007) (unpublished), in which we reversed and remanded on the child-support issue. On appeal, appellant contends that the trial court erred (1) in deviating from the presumed correct amount of child support calculated pursuant to the child-support guidelines in order to accumulate funds to be used in the future by a child over the age of majority to attend college; (2) in failing to compel documentation to verify the existence of, or the amount contained in, any account purported to be a "college fund" for the parties' children; (3) in failing to correct a reversible error in the previously appealed order on remand; (4) in improperly asserting that the presumed correctness of the amount of child support as calculated pursuant to the child-support guidelines had been rebutted when no such finding had been made in the previously appealed order; (5) in exceeding its mandate by modifying a child-support order absent a proper motion by either party; (6) in failing to consider the appellee's income, as defined by Administrative Order No. 10, when calculating her child-support obligation; (7) in imputing rental income to appellant without considering expenses related to generating the income; and (8) in improperly reducing appellee's child-support obligation retroactively and allowing her credit toward future child-support obligation for the overpayment of child support. We affirm the trial court's order and deny appellant's motion for Rule 11 sanctions.

*Facts*

The parties divorced on February 22, 1998, at which time they were awarded joint custody of their two minor children.[1] The parties have continued to be involved in protracted litigation, focused primarily on the issue of child support. A certain amount of procedural history is instructive to explain the current appeal.

On February 22, 2006, appellee filed a motion to change custody seeking full-time custody of the parties' son. Appellant counterclaimed, asking for an increase in child support. He also filed a motion for injunctive relief asking the court to enjoin appellee from having appellee's boyfriend, Dr. Ralph W. Herbert, treat the parties' children. He then filed a motion for Rule 11 sanctions against appellee and her attorneys.

On May 3, 2006, Judge Smith dismissed appellant's motion for Rule 11 sanctions. A hearing was held on June 29, 2006, on the other motions. In an order filed August 2, 2006, Judge Smith changed primary-physical custody of the parties' son to appellee, with the parties retaining a joint custody arrangement. Appellant's motion for injunctive relief was denied and child support was modified, with the trial court imputing $300 per-week income to appellant. Appellant was then ordered to pay $70 per week for the son to appellee. Appellee was to pay $250 per week for the parties' daughter to appellant based on her income of $1662 per week. The net difference was $180 per week in child support to be paid by appellee. However, in his oral ruling from the bench, Judge Smith explained that appellant owed another $70

---

1. The parties' son reached the age of majority on his eighteenth birthday, which occurred on September 26, 2007.

per week for child support for the daughter, and appellee was given dollar-for-dollar credit for her contribution to the children's college fund in the sum of $450 per month. After taking all these factors into consideration the trial court set the new child support due to appellant at $94 per week.

Appellant filed a motion to amend the August 2, 2006 order on August 11, 2006, arguing that the trial court imputed $600 per-week income to him rather than $300. Also, he alleged that for two children, he should not owe $140, but rather a lesser amount based on the family-support chart. He alleged that appellee overpaid on her tax returns and that her employer contributed to her retirement fund. He requested that $150 be added to appellee's |4take-home pay, increasing it to $1708 per week. In a letter, Judge Smith stated that the income amount imputed to appellant in the August 2, 2006 order was "very conservative" and that appellant is probably capable of earning more than that. Judge Smith elected to maintain the amount set in the order.

Appellant filed an appeal from the August 2, 2006 order on October 9, 2006, contending that the trial court erred in calculating child support; that the trial court erred by denying injunctive relief to prohibit a doctor from treating the children; and that the trial court erred by failing to impose Rule 11 sanctions. On October 31, 2007, we reversed and remanded on the child-support issue and affirmed the remainder of the trial court's order. A remand hearing was held in Judge Smith's court on July 10, 2008, during which testimony was presented by both parties.

An order was filed by the trial court August 12, 2008, in which Judge Smith noted that it did not appear that this court considered the $450 per month appellee contributed to the establishment of the parties' son's "trust fund" or "college fund," to which appellant made no contribution. The trial court deviated from Section V. of Administrative Order No. 10 and again found that appellee was to pay $94 per week from August 2, 2006, to September 26, 2007. This amount differed from the $131 set forth in this court's October 31, 2007 order and amounted to a difference of approximately $160 per month, which resulted in no arrearage accruing for that period.

For the period from September 26, 2007, to present, Judge Smith outlined all the evidence from the hearing, including rental payments received by appellant from his roommates and earning potential, and imputed a $635 net-weekly income to appellant, admittedly a substantial increase from the August 2, 2006 order. The family-support chart listed appellant's obligation for one child at that income at $112. The trial court then deviated from Section V. of Administrative Order No. 10 and found that appellee's child-support obligation should be $190 per week, rather than the $281 urged by appellant, resulting in a new net payment by appellee of $78 per week from September 26, 2007, forward.

Appellant filed a motion to vacate the August 12, 2008 order, or in the alternative to amend, on August 26, 2008. He filed an amended motion on September 8, 2008, adding a request that Judge Smith recuse himself from further participation in the case, based upon his alleged bias against appellant and in favor of appellee and her attorney. Appellee filed an answer to the motion to amend motion to vacate order on September 11, 2008,[2] and appellant filed

2. Appellee had filed a response to appellant's August 9, 2008 motion to vacate order or in the alternative to amend on September 2, 2008.

responses to that pleading on September 12, 2008, and again on September 18, 2008. After various correspondence was exchanged, the trial court entered an order on September 25, 2008, in which appellant's motion to recuse was denied, as was the motion to grant a new trial or amend the order.

Appellant filed a notice of appeal, solely as to the August 12, 2008 order, on September 30, 2008. We note that although this notice of appeal is timely under Arkansas Rule of Appellate Procedure–Civ. 4 (2008), appellant makes no reference to the denial of his motions in the September 25, 2008 order. Accordingly, he is precluded from raising any issues specifically resolved therein in this appeal. Specifically, appellant spends the first six pages of his brief basically arguing Judge Smith's alleged bias against him. Appellant specifically referenced his August 26, 2008 motion to vacate or amend and the September 8, 2008 motion to amend the motion to vacate or amend. We decline to consider this portion of appellant's argument because he failed to include the trial court's September 25, 2008 order that denied all of his post-trial motions in his September 30, 2009 notice of appeal.

Appellant subsequently filed a motion in this court for Rule 11 sanctions against appellee's attorney on June 4, 2009, followed by his brief in support on September 21, 2009. Appellee's attorney responded to appellant's motion on June 16, 2009.

*Standard of Review*

■ We review child-support orders de novo on the record, and we will not reverse a finding of fact unless the finding is clearly erroneous. *Hill v. Kelly,* 368 Ark. 200, 243 S.W.3d 886 (2006). The amount of child support lies within the sound discretion of the circuit court, and we will not reverse that amount absent an abuse of discretion. *Id.* The circuit court is required to reference the child-support chart, and the amount specified in the chart is presumed to be reasonable. *Ford v. Ford,* 347 Ark. 485, 65 S.W.3d 432 (2002); Ark.Code Ann. § 9–14–106 (Repl. 2002). This statute creates a rebuttable presumption that the amount contained in the family-support chart is the correct amount of child support to be awarded. Ark.Code Ann. § 9–14–106(a)(1)(B). "Income" for child-support purposes means "any form of payment, periodic or otherwise, due to an individual, regardless of source, including wages, salaries, commissions, bonuses, worker's compensation, disability, payments pursuant to a pension or retirement program, and interest." Admin. Order No. 10, § 2. This definition is intentionally broad and designed to encompass the widest range of sources consistent with the policy to interpret "income" broadly for the benefit of the child. *See Evans v. Tillery,* 361 Ark. 63, 204 S.W.3d 547 (2005).

In reviewing a trial court's findings regarding child support, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Hardy v. Wilbourne,* 370 Ark. 359, 259 S.W.3d 405 (2007).

*Discussion*

I. *Deviation from the presumed correct amount of child support in order to accumulate funds to be used in the future by a child over the age of majority to attend college.*

■ Appellant argues that the trial court erred in deviating from the presumed correct amount of child support by allowing appellee an improper income deduction for her $450 per month "college fund contribution." Appellant argues that this is not allowed in Administrative Order No. 10. He argues under *Towery v. Towery,* 285 Ark. 113, 685 S.W.2d 155 (1985),

that a parent's obligation ends when the child reaches majority, eighteen years of age by law. Appellant maintains that, because most children attend college after reaching the age of majority, forcing a divorced parent to pay for that education would effectively be forcing the parent to support the child after reaching the age of majority. *See id.*

He states that the purpose of child support is to provide for minor children, not to provide support for children past the age of majority. He contends that the trial court has withheld funds from him that are meant to support the minor children in order to "accumulate capital" to be used after they have reached the age of majority in conflict with *Smith v. Smith,* 341 Ark. 590, 19 S.W.3d 590 (2000) (holding that child support is not to provide for the accumulation of capital by children but to provide for their reasonable needs).

Assuming that the court finds it permissible to allow such an accumulation of child-support funds for use by a child over the age of majority and that a parent is obligated to pay for a child's college education, appellant argues that the deviation from the presumed amount of appellee's child-support obligation was excessive and unreasonable and constituted an abuse of discretion. The trial court decreased appellee's child-support obligation by $91 per week, which amounts to $394.33 per month, on the basis of "compensating" for her alleged contribution of $450 per month into a fund for the parties' daughter's "college fund." He urges that appellee, in effect, pays less than $56 of that amount while he, in effect, through the loss of child support pays $394 of the $450. He contends that the trial court found that the parent who has an income in excess of $125,000 per year is entitled to a $394 downward deviation from her child-support obligation for allegedly paying $450 into a college account, while the parent

who has an imputed income of $30,000.00 is denied the $394 in child support from the presumed correct amount.

Additionally, in his reply brief, appellant argues that appellee "flagrantly lied" to this court when she claimed "[t]he deviation is based upon [appellee's] testimony that she contributes $450.00 per month toward the child's trust fund, a fact unchanged since the last appeal." He submits that there is not now, nor has there ever been a "trust fund" for the parties' children. Appellant claims that the words "trust fund" do not appear in the record until the trial judge falsely invoked it in order to justify his findings, and further demonstrates his bias against appellant and for appellee.

Appellee refers to the provision of Administrative Order No. 10 that states that the presumption that the amount of child support set forth in the family-support chart may be overcome if the trial court provides specific written findings that include a justification of why the order varies as may be permitted by section(V). Section (V) sets forth the following factors to be considered when deviating from the amount set in the family-support chart: food, shelter and utilities, clothing, medical expenses, *educational expenses,* dental expenses, child care (including day care or other expenses for supervision of children necessary for the custodial parent to work), accustomed standard of living, recreation, insurance, *transportation expenses,* and other income or assets available to support the child from whatever source. (Emphasis added.)

The guidelines then list what are termed "additional factors": the procurement and maintenance of life insurance, health insurance, dental insurance for the children's benefit; the provision or payment of necessary medical, dental, optical, psychological or counseling expenses of the children; the *creation or maintenance of a*

*trust fund for the children;* the provision or payment of special education needs or expenses of the child; the provision or payment of day care for a child; the extraordinary time spent with the noncustodial parent, or shared or joint custody arrangements; the support required and given by a payor for dependent children, even in the absence of a court order; and where the amount of child support indicated by the chart is less than the normal costs of child care. (Emphasis added.) *See also Smith v. Smith, supra.* Furthermore, we note that the factors listed in Administrative Order No. 10 are not exclusive. *See Stewart v. Winfrey,* 308 Ark. 277, 824 S.W.2d 373 (1992); *Black v. Black,* 306 Ark. 209, 812 S.W.2d 480 (1991).

Appellee acknowledges that the previous opinion from this court stated that her child-support obligation should be $131 per week. On remand, the trial court accepted this court's calculation and then deviated from that figure by $37 per week based upon her testimony that she contributes $450 per month toward the minor child's trust fund. That contribution is a factor that is unchanged since the last appeal— except for the fact that the contribution now is going toward the parties' minor daughter's fund, as their son received his fund upon reaching the age of majority back in September 2007. She urges that the trial court followed the letter of the law in its order on remand.

Instead of using the educational expense in determining her net income, the trial court deviated from the family-support chart from $131 to $94. She submits that the trial court provided an extensive finding regarding the reasons for the deviation, including (1) the deviation was appropriate and in the best interest of the children; (2) the funds are for college expenses; (3) the basic needs of the children were not affected by the deviation; (4) appellee had rebutted the presumption

that the family-support-chart amount was correct. She argues that appellant has presented no proof that the trial court abused its discretion.

As to the imputation of additional income to appellant, appellee reminds us that this court's opinion specifically stated that "the trial court may consider its decision in the light of any changed circumstance that arose during the pendency of the appeal." At the subsequent hearing, appellee presented additional evidence regarding appellant's work history and ability to earn income. Based upon this evidence, the trial court found that appellant was "grossly underemployed." The trial court also considered the $800 per month that appellant received in rental income on the house he shares with his brother and girlfriend. Taking all these things into account, the trial court imputed a net-weekly income of $635 to appellant and set his child-support obligation at $112 per week. The trial court specifically found that it previously "took a very conservative position in relation to [appellant's] ability to provide income, probably to the detriment of [appellee]."

Appellee submits that the trial court considered extensive evidence regarding appellant's ability to earn income, and that based on *Grady v. Grady,* 295 Ark. 94, 747 S.W.2d 77 (1988), it was correct in ordering child support on the basis of his earning capacity rather than on his actual earnings. Accordingly, she argues that the trial court's decision to impute additional income to appellant was proper. We agree and affirm on this point.

II. *Failure to compel documentation to verify the existence of, or the amount contained in, any account purported to be a "college fund" for the parties' children.*

Appellant asserts that, despite issuing three child-support orders in the past six

years that have deviated downward from appellee's child-support obligation because she has claimed to be contributing to a "college fund" for the parties' children, the trial court has never requested that appellee provide documents to prove either the existence of, or the amount contained in, any account purported to be a fund to provide money for the parties' children to attend college. He claims that the amount of child support withheld from him based on this issue amounts to tens of thousands of dollars. Yet when he sought to obtain documentation through interrogatories and requests for production of documents, appellee refused to produce them, objecting that the requested material was irrelevant. Additionally, when appellant filed a motion asking the trial court to compel appellee to produce the requested information, the trial court declined to do so. He maintains that it is "patently unreasonable and improper" for the trial court to deviate from appellee's presumed correct child-support obligation because of her alleged contribution to a fund that the trial court refuses to verify even exists. He urges that the trial court's actions are further evidence of Judge Smith's bias against him and in favor of appellee.

Appellee responds as though appellant is questioning the sufficiency of the evidence with respect to this issue. She points out that she testified that she deposited $450 per month into the minor child's college fund. Appellant argues that she failed to provide proof of those deposits, and therefore the trial court erred in accepting her testimony as fact. However, disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. *White v. White*, 95 Ark.App. 274, 236 S.W.3d 540 (2006). She maintains that during the lengthy course of this lawsuit, she earned the trust of the trial court, as evidenced by the finding regarding the deposits in question. Additionally, appellant presented

neither testimony nor other evidence to detract from her credibility or meet his burden to demonstrate that the trial court abused its discretion with respect to this issue. We affirm on this issue.

### III. *The trial court on remand failed to correct a reversible error in the appealed order.*

Appellant argues that the trial court miscalculated his child-support obligation on remand. He submits that this court "clearly" meant that it was error to reduce appellee's income from $1,662 per week to $1,558 per week, thus reducing her child-support obligation by $15.60 per week. He contends that when *both* correct values are used to calculate the parties' child-support obligations, appellee's weekly obligation should be $147 ($249–$102). In the August 12, 2008 remand order, the trial court acknowledged this court's holding that appellee's child-support obligation was not correctly calculated and should have been $131 ($233–$102). Appellant argues that the trial court corrected only one of the reversible errors in its new calculation. By failing to correct the second reversible error set out by this court—the dollar for dollar deduction for appellee's contribution to the children's college accounts—the trial court, in effect, both offset appellee's income and deviated from her child-support obligation for the same $450 contribution. He argues that it is unreasonable and improper for the trial court to refuse to correct the obvious error after it was pointed out by him in his posttrial motions.

While appellee does not specifically address this issue, we hold that appellant has failed to demonstrate an abuse of discretion simply because those numbers do not exactly match up to those set out in this court's previous opinion. Because this court specifically directed the trial court to

consider any changes in circumstances that arose during the pendency of the appeal, the exact numbers set out in our previous opinion were likely to change based upon the evidence reviewed by the trial court at the subsequent hearing. The trial court considered our previous opinion, as well as the evidence presented by both parties at the subsequent hearing, and exercised its discretion in imputing income and setting the associated child-support obligations for each party. We hold that the trial court properly considered the evidence before it, referred to the required child-support chart, and explained its reasons for deviating therefrom. Accordingly, we affirm on this point as well.

IV. *Assertion on remand that the presumed correctness of the amount of child support as calculated pursuant to the child-support guidelines had been rebutted when no such finding had been made in the previously appealed order.*

Appellant reminds us that section (I) of Administrative Order No. 10 provides that there is a rebuttable presumption that the amount of child support calculated pursuant to the most recent revision of the family-support chart is the amount of child support to be awarded in any judicial proceeding for divorce, separation, paternity, or child support. However, at the conclusion of paragraph seventeen of the August 12, 2008 order, the trial court stated that appellee had rebutted the presumption that the amount of child support calculated by the family-support chart is correct.

Appellant improperly refers back to the June 29, 2006 hearing, stating that no argument for deviation from the family-support chart was made, either orally or in writing. No finding that the presumption had been rebutted was included in the August 2, 2006 order, and no such argument was made to this court by appellee during the previous appeal. Appellant contends that it was, accordingly, improper for the trial court to assert it in the August 12, 2008 order on remand.

To the extent appellant bases this point on appeal on the substance of the August 2, 2006 order, we find no merit in his argument. This issue was properly before the trial court on remand with specific instruction from this court that it could consider its decision in light of any changed circumstances that arose during the pendency of the appeal. We hold that it was proper for the trial court to consider, and subsequently make a finding upon remand, whether or not the presumption that the amount of child support calculated by the family-support chart is correct had been rebutted.

Appellant then continues his argument regarding the "complete fabrication" by the trial court that a "trust fund" has been established for the parties' children. He points to appellee's testimony that whatever type of "college fund" did exist had been given to the parties' son for his own use because he had received a full scholarship to the University of Arkansas.

Appellee testified at the most recent hearing that there was approximately $35,000 in their son's account, and that she had no intention of transferring it to the parties' minor daughter. She testified that she told their son that he could use the money for graduate school, but that he was currently using it for vehicle expenses and rent to live off-campus. Appellee stated, and her attorney clarified, that the money has been transferred to the parties' son, stating, "it's his, he's over eighteen, and it's his property."

Appellant claims that the trial court withheld tens of thousands of dollars in child support from him since 2002, money that should have been used to support the minor children, based on appellee's asser-

tion that she has been contributing it to their respective "college accounts." Although the trial court stated that appellee also had established such a fund for the parties' daughter, it never asked for proof of the existence of it or the amount contained therein—despite her testimony that she claimed to have given approximately $35,000 of it away to the parties' son, who is now over the age of majority. Instead, the trial court retroactively deviated from the presumptively correct amount for appellee's child-support obligation to support its finding of no arrearage on her part, which again, he claims deprived appellant of funds that should have been available to him for the children's care during their minority.

Appellee does not respond to this issue; however, the trial court specifically made a finding in the August 12, 2008 order that the presumption had been rebutted. It was incumbent upon appellant to request additional findings if he was not satisfied with the trial court's explanation. As the fact-finder in this case, the trial court was in the best position to weigh the evidence and credibility of the witnesses, and it was within Judge Smith's discretion whether to believe appellee's testimony regarding the establishment of the respective college accounts for the parties' children. Appellant had the opportunity to cross-examine her on the issue or attempt to present his own evidence to the contrary. He failed to do so. Accordingly, we affirm on this issue.

V. *The trial court exceeded its mandate by modifying a child-support order absent a proper motion by either party.*

Subsequent to the previous appeal, this matter was remanded to the trial court with the stipulation that "[o]n remand, the trial court may consider its decision in light of any changed circumstances that arose during the pendency of the appeal." Appellant submits that the trial court interpreted that to mean that it could consider any change of circumstances to be treated as if a motion had been made to modify whatever child-support order it ultimately produced to satisfy the mandate of this court related to the appeal of the August 2, 2006 order. He explains that the trial court then proceeded to hold a hearing and hear testimony on July 8, 2008, without apprising him that it would proceed as if a motion to modify had been filed.

At that hearing, evidence was presented regarding two changes in circumstance. First, the parties' son had reached the age of majority on September 26, 2007, and second, appellee's income had increased. The parties' son's eighteenth birthday relieved appellant, by law, of his support obligation to the child. That, he contends, along with the increase in appellee's income, should have had the effect of increasing the amount of child support paid from appellee to appellant. When taken in conjunction with the two reversible errors found by this court in the prior appeal, he maintains that there were actually four factors that each should have increased the amount of appellee's child-support obligation. Yet, the opposite occurred. The trial court actually decreased appellee's child-support obligation from ninety-four dollars per week to seventy-eight dollars per week. He argues that there were no changed circumstances, alleged or argued, to warrant the increase to his imputed income and the inclusion of rental income to him, and accordingly, the trial court exceeded this court's mandate.

Appellant cites *Martin v. Martin,* 79 Ark.App. 309, 87 S.W.3d 817 (2002), for the proposition that the modification of a child-support order requires the filing of a proper motion to modify. In that case, this court held that the trial court erred in

reducing a party's child-support payment in the absence of a motion for modification, relying on the provisions of Arkansas Code Annotated section 9–14–234(b) and (c) (Repl.2002). Because no motion to modify the parties' child-support obligations was filed by either party, appellant claims that it was not reasonable to expect that he should have known the nature of the July 8, 2008 hearing. He claims that he was severely disadvantaged by being deprived of the opportunity to conduct discovery and to prepare to argue and defend the issues that were covered in the hearing.

Appellant points out that he was unemployed at the time the August 2, 2006 order was filed, as well as at the time the August 12, 2008 order was filed. There was no evidence presented or argument made to the court that supported the trial court's decision to presume that circumstances had changed to such an extent that he was now capable of earning at least $450 per week instead of the $300 per week previously imputed to him. He asserts that the trial court, in order to support its imputation, falsely stated in its August 12, 2008 order that

> [appellant] admitted that he was capable of serving as an electrical and electronic engineering technician and agreed with the definition of an electrical and electronic engineering technician provided by the United States Department of Labor whereby he was trained to apply electrical and electronic theory and related knowledge, usually under the direction of engineering staff, to design, build, repair, calibrate, and modify electrical components, circuitry, controls, and machinery for subsequent evaluation and use by engineering staff in making engineering design decisions.

He strongly denies making such an admission. The trial court stated that he is capable of earning between fifteen and twenty dollars per hour, according to a document downloaded from the Internet on the day of the hearing,[3] and erroneously presented to the trial court as Defendant's Exhibit 2 instead of Plaintiff's Exhibit 2. Appellant argued at the hearing that the document did not constitute a "change in circumstances," and its presentation was not warranted by any "change in circumstances" as stipulated by this court's mandate. Additionally, he argued that, because he was not told that the court was holding a hearing to modify child support beyond this court's mandate and that appellee was going to be allowed to present new evidence, he was denied an opportunity to conduct discovery and was refused the opportunity to provide the trial court with evidence to rebut the new evidence presented by appellee.

■ We hold that when this court indicated that the trial court could "consider its decision in light of any changed circumstances that arose during the pendency of the appeal," it opened the door for the trial court to review new evidence regarding the child-support issue. Appellant's contention that he did not realize what the hearing would entail is meritless. Our supreme court has said that pro se appellants are held to the same standard as those represented by counsel. *See Moon v. Holloway*, 353 Ark. 520, 110 S.W.3d 250 (2003). The pro se appellant should be aware before he elects to proceed that pro se appellants receive no special consideration of their argument and are held to the same standard as a licensed attorney. *Elder v. Mark Ford & Assocs.*, 103 Ark. App. 302, 288 S.W.3d 702 (2008). Addi-

---

**3.** The order states that it is based on the "United States Department of Transportation" figures, although it appears that the trial court meant to use the term "Labor" rather than the term "Transportation."

tionally, this situation is distinguishable from the case where a trial court acts on its own accord to modify child-support obligations absent a motion to modify. Here, the trial court was acting in response to this court's order, which specifically allowed the consideration of new evidence. Accordingly, we affirm on this point.

**VI.** *The trial court failed to consider the appellee's income as defined by Administrative Order No. 10 when calculating her child-support obligation.*

Appellant submits that the definition of income in Administrative Order No. 10 includes payments to a pension or retirement program. He takes issue with the $1,881 per-week net income attributed to appellee in the trial court's most recent order, specifically with the trial court's statement in paragraph 21 that appellant urged the trial court to use that figure. Appellant explains that $1,881 was the amount of income that he argued should have been attributed to appellee for the August 2, 2006 child-support order—rather than the $1,661 figure used by the trial court.

He claims that in both of the previous two orders the trial court refused to consider appellee's full income as defined by Administrative Order No. 10, but that in the appeal of the August 2, 2006 order, this court found no abuse of discretion by the trial court in declining to consider the retirement-fund and tax-refund evidence because it had been conservative in imputing the income appellant was capable of earning. He acknowledges that in the August 12, 2008 order, the trial court addressed the issue of income imputed to him, increasing it by fifty percent, and once again refused to consider all of appellee's income, despite his renewed arguments about tax-refund and retirement-contribution income.

He argues that appellee's income pursuant to Administrative Order No. 10 should include $391—half of the $782.14 biweekly contribution of her employer toward her retirement as listed on the Earnings and Leave Statement attached to her Affidavit of Financial Means under "Benefits Paid by Govt." He maintains that her income should also include the amount of taxes refunded to her by the federal and state governments, based upon evidence he previously presented to the trial court indicating that appellee historically has income-tax refunds averaging $60 per week.

Inclusion of these amounts would add $315 to the $1,881 per-week net income the trial court used to calculate appellee's child-support obligation [$1,745 + $391 + $60 = $2,196 income]. This amount would result in a $328 per-week child-support obligation for appellee [$149 + $179 (15% of $1,196) ] instead of the $281 obligation calculated by the trial court. Finally, appellant argues that Judge Smith's "steadfast refusal" to consider this income despite a "clear obligation" to do so is additional evidence of his bias against appellant and for appellee.

Appellee claims that appellant's argument that the trial court erred in failing to consider additional income received by her was not presented to the trial court during the most recent hearing, and thus was not preserved for appeal. Moreover, she maintains that the order upon which appellant alleges error was prior to the last appeal in this case.

The doctrine of law of the case prevents an issue raised in a prior appeal from being raised on a subsequent appeal. The doctrine provides that a decision of an appellate court establishes the law of the case for the trial upon remand and for the appellate court itself upon subsequent review. *See Turner v. Nw. Ark. Neurosurgery Clinic, P.A.,* 91 Ark.App. 290, 210

S.W.3d 126 (2005). On the second appeal, the decision of the first appeal becomes the law of the case, and is conclusive of every question of law or fact decided in the former appeal, and also of those which might have been, but were not, presented. *See Griffin v. First Nat'l Bank*, 318 Ark. 848, 888 S.W.2d 306 (1994). Appellee submits that because this issue and point of appeal arose prior to the first appeal, the issue is barred from being raised here and must be dismissed.

Appellant counters in his reply brief that appellee's contention that this issue is not preserved is "absurd." He states that the trial court did not issue the child-support order in which it improperly considered appellee's income as defined by Administrative Order No. 10 until *after* the hearing, which made it impossible for appellant to raise the issue *during* the hearing. He argues that he preserved the issue for appeal by raising it in paragraph 9 of his motion to vacate order or in the alternative to amend, responding to the trial court's paragraph 21 in the August 12, 2008 order.

Despite appellant's contention, we find merit in appellee's law-of-the-case argument; additionally, appellant failed to specifically appeal the trial court's order denying his motion to vacate order or in the alternative to amend filed on September 25, 2008. Accordingly, we decline to address his argument on this issue.

VII. *The trial court imputed rental income to appellant without considering expenses related to generating the income.*

Appellant reiterates his argument that, because no proper motion to modify child support was made by either party, no order modifying child support should have been issued by the trial court. He notes that appellee neither argued nor presented evidence in support of the rent paid to appellant being counted as income for the purpose of computing his child-support obligation.

He questions whether the $800 per month should be counted as rental income at all. He acknowledges that it may have been a poor choice of words for him to have stated to the trial court that his brother and girlfriend pay him a monthly rent for the house that the three of them shared with the parties' minor daughter. Appellant maintains that the $800 goes entirely toward household expenses, and that it is only due to the fact that he has that money coming in that he can provide his daughter the opportunity to continue to live in the home she lived in before the divorce.

Appellant cites *Stepp v. Gray*, 58 Ark. App. 229, 947 S.W.2d 798 (1997), in which this court stated that surely, determining the "expendable income" of a child-support payor is still the ultimate task of the chancellor following the adoption of the child-support guidelines in 1989. He argues that what the trial court considered "rental income" contributes *nothing* to his "expendable income." He claims that he presented evidence to the trial court that should have been sufficient to prove that in the eyes of the Department of the Treasury and Internal Revenue Service he had a net rental income of $0 because of expenses in generating the rental revenue. He acknowledges that it is not clearly improper that income derived from his sharing his house be considered for the purpose of establishing his child-support obligation, he simply maintains that it was plainly unreasonable and an abuse of the trial court's discretion to consider "rent" paid to him as income without considering—as does the federal government for income tax purposes—the expenses related to the generation of that rental income.

Appellee correctly articulates that this court has held that rental income

is income for purposes of child support. *See Davis v. Davis,* 79 Ark.App. 178, 84 S.W.3d 447 (2002). Also, the payment of personal expenses by third parties can be considered income for purposes of setting child support. *See Brown v. Brown,* 76 Ark.App. 494, 68 S.W.3d 316 (2002). Here, appellant himself testified that he received income from his roommates in the sum of $800 per month. Appellee contends that the trial court was correct in including this sum as part of his income for the purpose of computing his child-support obligation. We agree. Although appellant claims that the $800 contributes nothing to his expendable income, his expendable income would be $800 less if he had to pay the expenses currently covered by that rental income out of his own pocket. We affirm on this issue.

VIII.    *The trial court improperly retroactively reduced appellee's child-support obligation and then allowed her credit toward her future child-support obligation for overpayment of child support.*

■ Appellant argues that the trial court erred in making its August 12, 2008 order effective as of September 26, 2007. He contends that it was improper for the trial court to impose retroactive modification of a support order beyond the filing date of a petition to modify. He cites *Shipp v. Shipp,* 94 Ark.App. 351, 230 S.W.3d 305 (2006), and *Paschal v. Paschal,* 82 Ark.App. 455, 117 S.W.3d 650 (2003), in which this court held that, absent a specific finding of fraud in procuring an existing support decree, it is an abuse of discretion to impose retroactive modification of a support order beyond the filing date of a petition to modify. In this case, he submits that there was no petition to modify child support by either party. Additionally, he urges that it was "wholly improper" for the trial court to go beyond this court's

mandate and hold a new child-support hearing on July 10, 2008.

Appellant asserts that because the trial court was not acting pursuant to a motion to modify the current child-support order that had been filed on August 2, 2006, the August 12, 2008 order (and its retroactive application to September 27, 2007—the date the parties' son turned eighteen) were invalid. Appellee increased her child-support payments to appellant by $70 per week after their son turned eighteen—the amount of support he claims the trial court erroneously obligated him to pay for their son. He maintains that there was no evidence presented during the hearing regarding an "overpayment" of child support, or any record of appellee claiming to have overpaid and asking for a credit toward her future child-support obligation. Because the trial court retroactively reduced appellee's child-support obligation and allowed her credit for an overpayment against future obligations, appellee has not made any child-support payments since August 2008.

Appellee acknowledges that a trial court's conclusions of law are given no deference on appeal, *see McWhorter v. McWhorter,* 346 Ark. 475, 58 S.W.3d 840 (2001), but submits that the commencement date of an award of child support is a matter within the discretion of the trial court. It is proper to make child support payable from the date of divorce or dissolution decree or from the date of the order or decree granting child support. She asserts that, in an appropriate case, it is within the discretion of the trial court to make an order for child support retroactive to an earlier date where it appears that the needs of the child existed as of that date. However, child support may not be ordered to commence earlier than the date the divorce action was commenced. *See Pardon v. Pardon,* 30 Ark. App. 91, 782 S.W.2d 379 (1990).

In the instant case, appellee submits that the trial court made the modification to her child support pursuant to the remand issued by this court, but determined her child-support obligation to be $190 per week rather than $281 per week. The trial court found that the modification was to be retroactive from September 26, 2007, creating an overpayment of $78 per week, thus resulting in an overpayment that was awarded as a credit to her. She maintains that appellant has failed to show how the trial court abused its discretion in making the child-support modification retroactive. The primary fact supporting the trial court's decision to modify her obligation was her continuing investment in the children's college funds, which she was making in September 2007, at the time child support was previously modified. As such, she urges that the trial court was within its discretion to grant her retroactive relief.

In his reply brief, appellant acknowledges that *Pardon, supra,* answers the question of whether it is proper to make child support payable from the date of divorce or dissolution decree or from the date of the order granting child support. However, he contends that that particular question is irrelevant in this case. Here, he states that the relevant question to be answered with respect to this issue is whether it is proper for the trial court to modify child support absent a motion by either party, and further, whether it is proper to make such a modification retroactive.

As previously discussed, this situation is distinguishable from a case where a trial court acts on its own accord to modify child-support obligations absent a motion to modify. We hold that appellant has failed to demonstrate reversible error with respect to the trial court's retroactive modification of appellee's child-support obligation under these specific circumstances, as well as with respect to the resulting credit for previous overpayment. Accordingly, we affirm on this point.

Finally, we find no merit in appellant's motion for Rule 11 sanctions against appellee's attorney filed on June 4, 2009, followed by his brief in support on September 21, 2009. We hereby deny appellant's motion.

Affirmed; motion for Rule 11 sanctions denied.

GLOVER and HENRY, JJ., agree.