2012 Ark. App. 408

**Carol WILLIAMS, Appellant**

v.

**Mickey NESBITT, Appellee.**

**No. CA 11–1113.**

Court of Appeals of Arkansas.

June 27, 2012.

Scott A. Scholl, Rice & Adams, Jacksonville, for Appellant.

Teresa M. Smith, Carlisle, for Appellant.

JOSEPHINE LINKER HART, Judge.

Carol Williams appeals an order of the Lonoke County Circuit Court concerning the support of her minor child. On appeal, she argues that the trial erred when it (1) failed to award her interest and attorney fees on the unpaid support; (2) failed to reduce the arrears owed to judgment; and (3) granted appellee Mickey Nesbitt, the father of her out-of-wedlock child, access to the minor's medical records. We affirm.

A brief recital of the procedural history of this case is essential to understanding our disposition. The minor child was born on December 21, 2000. Paternity was established on December 10, 2002. In the original support order, appellee Mickey Nesbitt was found to have a weekly net

income of $1086.00. Support was ordered in the amount of $729 per month, which was based on the aforementioned weekly net income. Nesbitt was also ordered to pay half of the minor child's medical expenses that were not covered by insurance. The total arrearage for this support was calculated to be $15,989.95, and Nesbitt was ordered to pay $100 per month to amortize the arrearage. Neither party appealed from this order.

On December 29, 2003, Williams filed a motion to increase her child support. Both parties asked to have the other found in contempt. In his countermotion, Nesbitt alleged that Williams was misrepresenting the amount of medical expenses that his child had incurred. The trial court denied both motions, and Williams appealed. We reversed and remanded, holding that Nesbitt appeared to have caused an excessive amount of tax to be withheld from his paycheck. *Williams v. Nesbitt*, 95 Ark.App. 79, 234 S.W.3d 343 (2006). On remand, by order dated May 4, 2007, the trial court found that Nesbitt's net weekly pay was $1241.18, and it ordered the amount of support indicated by Administrative Order Number 10–$845 per month. The new support obligation was made retroactive to January 12, 2005, but the order was silent on reducing the arrearage to judgment, interest on the arrearage, and attorney fees. It is not disputed that Nesbitt paid the full $845 per month beginning in June 2007.

On November 16, 2010, Nesbitt petitioned for a reduction in his child-support obligation, alleging that his income had declined by more than ten percent. Williams answered and moved to have Nesbitt found in contempt for failing to obtain dental insurance for the minor child. She also sought a judgment and interest on the child support that was owed, but not paid, for the period from January 12, 2005 to June 2007—the difference between $845 and $729 per month, which totaled $3364. Additionally, she asked to have the remaining balance of the $15,989.95 child-support arrearage established by the December 10, 2002 order reduced to judgment and to have interest charged on the unpaid balance. In her motion, Williams acknowledged that the December 10, 2002 order allowed Nesbitt to amortize the arrearage by paying $100 per month and that he had made all of the court-ordered payments.

On June 14, 2011, a hearing was held on the parties' respective motions. Nesbitt presented proof that his income had decreased since the entry of the May 4, 2007 order. The trial court found in his favor on this point and set support at $148 per week based on his average net weekly income of $986.98.[1]

At the hearing, Nesbitt conceded that he owed the difference between the $845 he was ultimately ordered to pay under the May 4, 2007 order and the $729 he had been paying pursuant to the March 8, 2005 order. He asked for and was granted sixty days to pay that arrearage. Regarding the initial arrearage established in the December 10, 2002 order, Nesbitt testified that he had paid the court-ordered $100 per month "religiously." The trial court denied Williams's request to alter the payment arrangement established in the December 10, 2002 order.

Finally, Nesbitt asked for a HIPAA release so that he could "verify" the unreimbursed medical expenses that he was required to split with Williams. He conceded that he had never visited the minor child and had never asked for court-ordered visitation. However, he asserted

---

1. Williams does not challenge this finding on appeal.

that, in the past, Williams had presented him with duplicate bills and bills that were charged for "other children." He also doubted that Williams had actually been referred to medical providers in the civilian community when free medical care was available at the Little Rock Air Force Base in Jacksonville. Williams disputed these accusations. In any event, the trial court granted Nesbitt's request for a HIPAA release. Williams timely appealed from the trial court's August 5, 2011 order.

We review traditional cases of equity de novo on the record. *Hudson v. Hilo,* 88 Ark.App. 317, 198 S.W.3d 569 (2004). While we will not reverse factual findings by the trial court unless they are clearly erroneous, a trial court's conclusion of law is given no deference on appeal. *Id.*

For her first point, citing *Mills v. Mills,* 2009 Ark. App. 175, 315 S.W.3d 707, Williams argues that the trial court erred in failing to order that ten-percent interest be paid on the arrearage established by the December 10, 2002 order. She contends that interest is mandatory under Arkansas Code Annotated section 9–14–233. Further, Williams relies on the same statute to assert that the trial court erred in failing to award attorney fees in an amount equal to ten percent of the unpaid child support. We disagree.

Williams's reliance on *Mills* is misplaced. *Mills* involved the initial establishment of a child-support arrearage, essentially the same cause of action that Williams had filed in 2002, which resulted in the December 10, 2002 order. As noted above, Williams did not appeal from that order. Accordingly, pursuant to Rule 60 of the Arkansas Rules of Civil Procedure, the trial court lost jurisdiction to modify the December 10, 2002 order after ninety days. Further, the doctrine of res judi-

cata precludes Williams from again trying to litigate this issue. The purpose of res judicata is to put an end to litigation by preventing a party who has already had a fair trial on the matter from litigating it again. *Hardy v. Hardy,* 2011 Ark. 82, 380 S.W.3d 354. Where a case is based on the same events as the subject matter of a previous lawsuit, res judicata will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *Id.* Also, res judicata bars a subsequent lawsuit that raises issues resolved in a final judgment from which an appeal was not taken in a previous lawsuit. *Id.* Accordingly, because Williams failed to appeal the December 10, 2002 order that did not impose statutory interest, the doctrine of res judicata prevented Williams from relitigating those issues in the 2011 proceedings.

Regarding Williams's assertion that she was entitled to attorney fees, that argument is likewise barred by res judicata. There is no indication that Williams requested attorney fees in the matter concluded by the May 4, 2007 order, and the prior appeal established that the award of attorney fees was not an issue in the proceedings concluded by the March 8, 2005 order.

Williams next argues that the trial court erred because, pursuant to Arkansas Code Annotated section 9–14–234(b), she was entitled to have any child-support arrearage owed to her reduced to judgment. She cites *Sharum v. Dodson,* 264 Ark. 57, 568 S.W.2d 503 (1978), for the proposition that she was entitled to child-support payments as they became due. Accordingly, she was entitled to a judgment as matter of right when they were not paid. Further, she analogizes the case at bar to *Hill v. Hill,* 84 Ark.App. 132, 134 S.W.3d 6 (2003), where the court of appeals held that a trial court could not restrict the

right of a child-support payee to collect a judgment for a child-support arrearage to a mandated monthly payment. She also notes that the *Hill* court quoted *Stewart v. Norment*, 328 Ark. 133, 941 S.W.2d 419 (1997), where the supreme court stated in part, "The fact that an order also provides for income withholding to satisfy accrued support arrearages is irrelevant in determining whether garnishment provides a viable alternative method for collecting the arrearage." We find no merit in this argument.

Once again, Williams is attempting to relitigate a matter that has already been decided by the trial court. The child-support arrearage in question has already been reduced to judgment by the December 10, 2002 order. Arkansas Code Annotated sections 9–12–314 and 9–14–234 (Repl.2009) state that any decree, judgment, or order that contains a provision for payment of child support shall be a final judgment as to any installment or payment of money which has accrued. Like Williams's argument concerning the trial court's failure to award interest and attorney fees, the doctrine of res judicata prevents the relitigation of this matter. Accordingly, we affirm on this point.

Finally, Williams argues that the trial court erred in granting Nesbitt a HIPAA release because it was uncontroverted that Nesbitt had little contact with the minor child and there would be "no benefit to the child" for him to have access to the child's protected health information. She asserts that the "only purpose [she] knew of for [Nesbitt] to request such access was for its use to harass her." We disagree.

At the hearing, Nesbitt stated that he needed the HIPAA release to verify that the medical services were actually being provided to his child. He asserted that Williams had previously presented him with medical bills for services that had been provided to other children. This testimony is reason enough to grant Nesbitt access to his child's health information. Additionally, we find no support in the record for Williams's assertion that Nesbitt only wanted the information to "harass" her. If anything, the record indicates that Nesbitt has made a conscious effort to not inject himself into Williams's life. Accordingly, we hold that the trial court did not err in ordering that Williams provide a HIPAA release to Nesbitt.

Affirmed.

GLADWIN and MARTIN, JJ., agree.