

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV–15–379

| | |
|---|---|
| MARILYN CURRY TROUTMAN<br>APPELLANT | **Opinion Delivered** February 3, 2016 |
| V. | APPEAL FROM THE WASHINGTON<br>COUNTY CIRCUIT COURT<br>[NO. DR–04–1055] |
| | HONORABLE MARK LINDSAY,<br>JUDGE |
| RONALD TROUTMAN<br>APPELLEE | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Appellant Marilyn Curry Troutman (who now goes by Curry) appeals from the decision of the Washington County Circuit Court granting appellee Ronald Troutman's petition to modify his monthly child-support obligation. Curry argues on appeal that the circuit court erred in finding that a material change in circumstances existed that warranted a modification of child support and that the circuit court likewise erred in its calculations. We disagree and affirm.

Our standard of review for an appeal from a child-support order is de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Hall v. Hall*, 2013 Ark. 330, 429 S.W.3d 219; *Brown v. Brown*, 2014 Ark. App. 455, 440 S.W.3d 361. In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be

accorded to their testimony. *Brown*, *supra*. Moreover, it is the province of the trier of fact to resolve conflicting testimony. *Crismon v. Crismon*, 72 Ark. App. 116, 34 S.W.3d 763 (2000). As a rule, when the amount of child support is at issue, we will not reverse the circuit court absent an abuse of discretion. *Id*. However, a circuit court's conclusion of law is given no deference on appeal. *Id*. With these standards in mind, we turn our attention to the facts of this case and the decision of the circuit court.

Curry and Troutman were divorced in 2005. At the time of the divorce decree, Troutman was ordered to pay $762 per month in child support for the parties' one child. In the years since the decree, the circuit court increased Troutman's child-support obligation twice: to $3,095 a month in 2011, and to $6,005 a month in 2012. In each instance, the court based its calculations on the fact that Troutman was self-employed, and his income was determined by considering his reported wages from his previous two years' tax returns. *See* Ark. Sup. Ct. Admin. Order No. 10(III)(c).

In 2014, Troutman filed a petition to modify the divorce decree, alleging that, since the last order modifying the amount of child support, there had been a material change in circumstances in that he had experienced a reduction in his income of more than 20% or $100 per month. Troutman asked the court to decrease his child-support obligation to the amount recommended by the family support chart based on the average of his net income from 2012 and 2013. Curry denied that a material change in circumstances had occurred.

The evidence before the circuit court can be fairly summarized as follows. Troutman is a general contractor and is the owner and sole shareholder of Boulder Construction

("Boulder"), which is structured as a subchapter S corporation. In the tax year of 2012, Boulder had ordinary business income of $706,024, and Troutman reported $717,137 in total personal income. In the tax year of 2013, Boulder experienced a loss of $171,892, and Troutman had a loss of $118,387. During the tax year of 2013, however, Boulder reported $785,392 in deferred income, and the company made a $554,745 distribution to Troutman as the sole shareholder of Boulder. Curry requested that both the deferred income and the shareholder distribution be taken into consideration for purposes of calculating child support. Troutman disagreed with this proposition.

To assist the circuit court with the task of determining Troutman's income, both Troutman and Curry introduced the testimony of accountants, who each described the process by which they had calculated the appropriate amount of child support. Both accountants agreed that calculating child support based upon tax-return data is permissible and customary. However, Jake Keen, Curry's expert witness and a CPA, urged the court to consider both the deferred income of Boulder and the shareholder distribution to Troutman in the process. Keen opined that using this methodology was more reliable for calculating child support because it considered the amount of money that was available to Troutman to live on.

Troutman's accountant and expert, Reese Parham, disagreed. He urged the court to continue to use the tax-return data as the methodology in its child-support calculations, as it had in the past, and to reject the distribution and deferred-income methodology. Parham explained that he used the "completed contract" or "project completed" accounting method

for tax purposes for Boulder, just as he did for other contractors and construction companies of similar size. Under this accounting method, Boulder's deferred income from 2013 would be taxed in 2014. Likewise, Parham rejected Keen's calculation of Troutman's income by including the $554,745 distribution, noting that the cash for the distribution had been earned in previous years and thus had already been subjected to taxes and calculations for child-support obligations.

Based upon this evidence, the court disregarded the distribution and the deferred income and calculated Troutman's child-support obligation the same way it had been calculated in previous years—that is, by taking Troutman's income from the previous two years' (2012 and 2013) income tax returns.[1] Applying those figures, the court determined that Troutman had a net monthly income of $14,447. The court found that Troutman had met his burden of proving a material change in circumstances with respect to his income and ordered that, pursuant to the family support chart, Troutman's child-support obligation would be set at $2,108 per month. The court further concluded, however, that because Troutman had been paying the previously established amount of child support—$6,005—since he had filed his petition to modify, Curry had received an overpayment of $27,379. Because Curry could not afford to repay Troutman the entire lump sum, the court ordered that Troutman was entitled to recoup the overpayment by reducing his child-support payments by $1000 per month, until such time as he had fully recovered the overpayment.

---

[1] Having heard testimony concerning Troutman's 2013 loss and the nature of deferred income until project completion, the court did not take any 2014 quarterly estimates into consideration.

After the court's decision from the bench was reduced to a written order, Curry filed a timely notice of appeal. She now urges to this court that (1) the circuit court erred in finding that there had been a material change in circumstances that warranted a reduction of Troutman's child-support obligations, and (2) the circuit court erred in its calculation of that reduction.

Although Curry enumerates two separate points on appeal, her arguments are sufficiently intertwined that we treat them together. She complains that the circuit court erred in finding that a material change in circumstances had occurred to warrant a modification in Troutman's child-support obligation and, based on the same reasoning, that the circuit court erred in its calculation of Troutman's income. In essence, she argues that the court failed to take a broad view of the funds that Troutman had available as "income" and accepted an inappropriate methodology for determining Troutman's income.[2]

It is axiomatic that a change in circumstances must be shown before a court can modify an order for child support. *Hall, supra*; *Hill v. Kelly*, 368 Ark. 200, 243 S.W.3d 886 (2006). In addition, the party seeking modification has the burden of showing a change in circumstances. *Hall, supra.* In determining whether there has been a change in circumstances warranting adjustment in support, the court should consider such matters as a change in the income and financial conditions of the parties, the financial conditions of the parties and

---

[2] Curry complains briefly that the circuit court "based its ruling on a single-page summary sheet attached to Troutman's Affidavit of Financial Means." This specific complaint is raised only once, however, and is clearly belied by the circuit court's examination of hundreds of pages of tax-return documents at the hearing.

SLIP OPINION

families, and the child-support chart. *Id*. The supreme court has made it clear that a finding that a material change in circumstances has occurred is subject to a clearly erroneous standard of review. *Id*.

The question of whether there has been a material change in circumstances is governed by Arkansas Code Annotated section 9-14-107(a)(1) (Repl. 2015), which provides as follows:

> A change in gross income of the payor in an amount equal to or more than twenty percent (20%) or more than one hundred dollars ($100) per month shall constitute a material change of circumstances sufficient to petition the court for modification of child support according to the family support chart after appropriate deductions.

Curry argues that Troutman failed to demonstrate that he experienced a material change in circumstances because the financial information, taken together, indicates that he had access to much more cash than his tax returns reflected. She bases this contention on Keen's testimony that Boulder's 2013 Schedule M-1 showed that Boulder possessed $785,392 in deferred income and that Troutman had accepted a $554,745 distribution from Boulder in 2013, although neither of these figures was reflected on Troutman's 2013 individual income-tax return, which showed a loss of $118,487.

Curry alleges three ways in which the circuit court's findings regarding a material change in circumstances were incorrect: (1) the court erred in relying exclusively on Troutman's 2012 and 2013 reported individual income and failing to consider all sources of funds available to him; (2) the court erred in finding a material change in circumstances despite the absence of evidence regarding Troutman's income for 2014; and (3) the methodology employed by the court in calculating Troutman's income gave Troutman too

much discretion and control over demonstrating whether a material change in circumstances had occurred.

Taking the first two of these arguments together, we find Curry's contentions to be unavailing. In determining an appropriate amount of child support, courts are to refer to the family support chart contained in Supreme Court Administrative Order Number 10, which provides a means of calculating child support based on the payor's net income. *Browning v. Browning*, 2015 Ark. App. 104, 455 S.W.3d 863; *Cowell v. Long*, 2013 Ark. App. 311. Pursuant to Administrative Order No. 10(III)(c), for self-employed payors like Troutman, "support shall be calculated based on the last two years' federal and state income-tax returns and the quarterly estimates for the current year." Here, the circuit court based its determination of Troutman's income on his 2012 and 2013 federal and state income-tax returns. Because Troutman had experienced a loss in 2013, there were no quarterly estimates for 2014; moreover, because of the way his business accounting was performed, according to Troutman's accountant, there was no accurate way of estimating his 2014 income until Boulder's projects for that year were complete. The circuit court was entitled to accept Troutman's expert's testimony as credible and reject Curry's. *See Winn v. Winn Enters., Ltd. P'ship*, 100 Ark. App. 134, 265 S.W.3d 125 (2007) (the strength or lack of strength of the evidence on which an expert's opinion is based goes to the weight and credibility, rather than to the admissibility, of the opinion in evidence, and the fact-finder may accept or reject all or any part of the testimony of expert witnesses).

SLIP OPINION

Regarding Curry's third contention, she complains that the circuit court erred in refusing to consider other sources of income. In matters of child support, the definition of income is intentionally broad and designed to encompass the widest range of potential income sources for the support of minor children. *Montgomery v. Bolton*, 349 Ark. 460, 79 S.W.3d 354 (2002); *Stuart v. Stuart*, 99 Ark. App. 358, 260 S.W.3d 740 (2007). However, caselaw has specifically held that the definition of income for purposes of support may differ from income for tax purposes. *See Stuart*, *supra*; *Huey v. Huey*, 90 Ark. App. 98, 204 S.W.3d 92 (2005); *Delacey v. Delacey*, 85 Ark. App. 419, 155 S.W.3d 701 (2004); *Brown v. Brown*, 76 Ark. App. 494, 68 S.W.3d 316 (2002).

Curry "recognizes that retained earnings and company assets do not equate to income for child-support purposes." Despite her acknowledgment, she nonetheless cites *Anderson v. Anderson*, 60 Ark. App. 221, 963 S.W.2d 604 (1998), and *Pannell v. Pannell*, 64 Ark. App. 262, 981 S.W.2d 531 (1998), as holding that a child-support obligor cannot, in essence, utilize the retained earnings or deferred income of a subchapter S corporation to minimize or reduce the amount of income available to pay child support. *See Anderson*, 60 Ark. App. at 230, 963 S.W.2d at 609.[3]

---

[3] We also note that, in her reply brief, Curry cites extensively to *Hawk v. Osborn*, 2009 Ark. App. 323. This case, however, was decided on April 22, 2009, as an unpublished opinion. Arkansas Supreme Court Rule 5-2(c) states that "[o]pinions issued before July 1, 2009, and not designated for publication shall not be cited, quoted, or referred to by any court or in any argument, brief, or other materials presented to any court . . . ."

SLIP OPINION

However, Curry never alleged below that Troutman was abusing his subchapter S corporate structure to hide assets or minimizing his income by excluding retained earnings or deferred income, and the circuit court certainly never ruled on or made any findings on this particular argument. It is well settled that this court will not consider arguments raised for the first time on appeal, *McWhorter v. McWhorter*, 351 Ark. 622, 97 S.W.3d 408 (2003), and an appellant must obtain a ruling from the circuit court on an issue in order to preserve an argument for appeal. *Hanks v. Sneed*, 366 Ark. 371, 235 S.W.3d 883 (2006). Because the trial court did not rule on the claim, this court has nothing to review. *See Lucas v. Wilson*, 2011 Ark. App. 584, 385 S.W.3d 891 (when there is no ruling by the trial court on an issue, there is nothing for this court to review and determine).

To the extent that Curry complains generally that the circuit court erred in excluding from its income calculation the $785,392 listed on Boulder's Schedule M-1, we disagree. Parham described this dollar figure as representing deferred income. Parham explained that, given Boulder's accounting method, which used the "completed projects method," the money would appear on Troutman's 2014 income in some fashion, depending on the actual results and actual profits derived from the projects that were completed in 2014.[4] As Troutman's child-support obligations are reviewed from year to year, Parham said, "this money is always going to work itself out in the wash." The court accepted Parham's expert testimony as credible, which it was allowed to do. *Roberts v. Yang*, 2010 Ark. 55, at 5, 370

---

[4] Even Keen acknowledged that this deferred income was money that he "would expect to see on [Troutman's] 2014 income-tax return [and] might be used for future child-support calculations."

S.W.3d 170, 173 ("The appellate court gives due deference to the [circuit court's] superior position to determine the credibility of witnesses and the weight to be given their testimony.").

We therefore find no merit to Curry's argument that the circuit court erred in finding that Parham demonstrated a material change of circumstances. His gross income, according to his 2012 and 2013 income-tax returns, clearly changed by more than 20% or $100 per month. Pursuant to Arkansas Code Annotated section 9-14-107(a)(1), this constituted a material change of circumstances sufficient to support the modification. *See Cowell, supra.*

In her second enumerated point on appeal, Curry argues that the circuit court erred in its calculation of Troutman's income for purposes of child support. Because she acknowledges that her analysis of this issue is identical to the analysis of her previous point on appeal, and because we rejected that argument as set out above, we decline to address Curry's second point in any further detail.

Affirmed.

GRUBER and HOOFMAN, JJ., agree.

*Taylor Law Partners, LLP*, by: *William B. Putnam*, for appellant.

*Cullen & Co. PLLC*, by: *Tim Cullen*, for apellee.