

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-16-60

| | |
|---|---|
| SHANNON LANGSTON<br><div align="right">APPELLANT</div><br>V.<br><br>MARK BROWN<br><div align="right">APPELLEE</div> | **Opinion Delivered:** November 2, 2016<br><br>APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT [NO. 47DR-2012-40]<br><br>HONORABLE ELLEN BASS BRANTLEY, SPECIAL JUDGE<br><br>AFFIRMED IN PART; REVERSED IN PART |

## WAYMOND M. BROWN, Judge

Appellant appeals from the circuit court's September 28, 2015 order. On appeal, appellant argues that the circuit court erred in (1) imputing income of $2,500 to her bank account on the entry date of the divorce decree; (2) granting appellee's motion to reduce child support; (3) allowing a reduction of income for child support purposes; (4) its ruling refusing to order appellee to remove a video camera from the room on the parties' minor child, G.L.B;[1] and (5) denying appellant's motion that appellee's tax refunds be considered income for purposes of child support. We affirmed in part and reverse in part.

---

[1] G.L.B. was six years of age at the time of the divorce decree.

## I.    *Facts*

A divorce decree was entered on February 8, 2013, granting appellant a divorce from appellee pursuant to Arkansas Code Annotated section 9-12-401(b)(4).[2] In pertinent part, appellee was ordered to pay child support in the amount of $357 biweekly in addition to 15% of any additional net bonuses from his job and 15% of any additional net farm income over and above the periodic support obligation. He was to remit any additional support from net bonuses within five days of receipt and from farm income within ten days of receipt. Appellee was ordered to continue to provide and maintain the current health insurance for G.L.B.

Appellant filed a verified motion for contempt on September 20, 2013. Appellant then filed a motion to modify the divorce decree on October 10, 2013, seeking payment of appellee's child support obligation by wage withholding. Appellee responded to appellant's motion to modify the divorce decree on October 17, 2013, and did not object to a wage-assignment order. Appellee also responded to appellant's motion for contempt on October 17, 2013.

Appellant filed a motion to modify appellee's child support obligation on January 2, 2014, asserting a material change in circumstances "in that there exist[ed] an inconsistency between the current child support and the amount of support which results from the application of the family support chart to [appellee's] net income after allowable withholdings are made through his regular take-home pay as well as his bonuses." She

---

[2] (Repl. 2015).

alleged that appellee was "manipulating" the amount of his net biweekly take home pay by claiming zero dependents and receiving monies in the form of a tax refund that should be going toward increased child support. Appellee responded to appellant's motion to modify child support, denying all allegations, on January 9, 2014.

Appellant then submitted an entry of appearance as her own co-counsel on May 15, 2014.[3] The circuit judge ultimately recused himself from the case.

Appellee then filed a motion to reduce child support on June 2, 2014, alleging a material change in circumstances that warranted a reduction of his child support obligation. He sought retroactive application of reduced child support to the date of the motion plus reimbursement of any "overpaid amounts" while awaiting a hearing on the matter. By order entered on June 6, 2014, our supreme court assigned a new judge to the case.

Appellant responded to appellee's motion for reduced child support on June 9, 2014, arguing that appellee's child support obligation should not be reduced because he voluntarily left his job and therefore, his voluntary actions did not constitute a material change in circumstances.[4]

A number of other motions were filed between the parties including multiple motions for contempt by appellant. All motions were heard in a hearing held on September 22 and 23, 2014.[5] Sticking mainly to information not already covered in the pleadings,

---

[3] Appellant is a district judge.

[4] Appellant also argued, however, that appellee had submitted no proof of income with which a determination of whether appellee qualified for a reduction of child support could be made. She requested that appellee be required to provide proof of his current income.

appellant testified that appellee allowed the insurance for the child to lapse before he left his employment for Walmart. She testified that appellee told her the insurance was not valid as of May 9, 2014, and that the child did not have insurance again until June 1, 2014. Accordingly, she had had to pay a couple of medical bills out-of-pocket that she wanted to be reimbursed for.

Appellee testified that he left his employment with Walmart after 28 years because he "noticed over the last probably seven months that [he] was being harassed." He ultimately was given the option to "step down to be an assistant manager" with a "cap" pay of $45,000 per year or resign. The bonus structure was different for assistant managers getting $2,000 a year, "if they get that." He chose to resign and his last day was May 9, 2014. He bought an outdoors, guns, and ammunition business in Kennett, Missouri, taking over operations on May 31, 2014. He was the only employee of the business at the time of the hearing. He was not "currently drawing" income from the business; he was "living off of [his] wife's income" and "[his] cashed out retirement."[6] He had numerous debts including a loan for inventory in his store and monthly payments to the previous owner of the business for the purchase of the business.

Appellee had collected "about $41,000[,]" including taxes, from June 1, 2014, through September 17, 2014, "before [his] overhead was considered." With an income of

---

[5] There had been a previous hearing in which appellee had testified and put on all his witnesses; however, appellant requested the judge's recusal thereafter, which he agreed to, and a special judge was assigned to hear the case. The new judge read all the testimony from the previous hearing.

[6] Appellee had remarried.

$45,000, in addition to $8,400 that his wife was paying for insurance, he calculated that his net income was approximately $1,908.00 per month, which would require a child support payment of $419 per month according to the child support chart. With an income of $60,000 plus the amount paid for insurance, his child support payment should be $487 per month. Appellee was able to add G.L.B. to his wife's insurance without additional cost.

At appellant's request, appellee read a couple of articles, one in which he was quoted as stating that he left Walmart "primarily because of the quality of life he was giving up" and because "it was time to do something else[,]" and another in which it stated that he took over his new business from his wife's grandfather and that "[b]usiness has really picked up[.]" He admitted that he could have found another retail job, but had not applied for any other options of employment. He bought the business because it allowed him to stay in the area. A "very rough ballpark" of his salary the year before was $85,000, though he might have been off and it might have been around $100,000.

Appellee admitted having a camera in G.L.B.'s room and testified that he thought it was "appropriate to have a camera in a little girl's room." He noted that he had a camera in every room in the house since a break-in, though her room was "untouched" during the break-in, and that the camera was in G.L.B.'s room for "[his] purpose." He did not have an objection to taking the camera out of G.L.B.'s room and would take it out if the child wanted him to; she never told him that she liked or disliked having the camera in her room.

The circuit court entered its order on September 23, 2015. Therein, in pertinent part, it granted appellee's motion to reduce child support and made the award retroactive to June 1, 2014, awarding child support of $542 per month based on an estimated income

of $60,000 per year; imputed $2,500 to the account balance in her bank account on the entry date of the divorce decree; made half of the $700 appellee's wife spent on insurance attributable to G.L.B., thereby allowing appellee an annual deduction of $4,200 for payment of G.L.B.'s health insurance;[7] ordered that the camera in G.L.B.'s room was not required to be removed, but must be nonoperational when G.L.B. was in appellee's care during his visitation; and denied appellant's motion to have appellee's tax refunds considered income for child support purposes. This timely appeal followed.

## II.     *Standard of Review*

We review traditional cases of equity de novo on the record.[8] While we will not reverse factual findings by the trial court unless they are clearly erroneous, a trial court's conclusion of law is given no deference on appeal.[9]

## III.     *Imputation of $2,500 Income to Appellant*

Appellant's first argument on appeal is that the circuit court erred in imputing income of $2,500 to her bank account on the entry date of the divorce decree. The statutory authority for a circuit court's division of property upon divorce is set forth in Arkansas Code

---

[7] The amount was to be $233 monthly of the $700 in the event that appellee's then-pregnant wife gave birth as planned, thereby allowing appellee an annual deduction of $2,796 for payment of G.L.B.'s health insurance.

[8] *Williams v. Nesbitt*, 2012 Ark. App. 408, at 4, 421 S.W.3d 320, 323 (citing *Hudson v. Hilo*, 88 Ark. App. 317, 198 S.W.3d 569 (2004)).

[9] *Id.*

Annotated section 9–12–315.[10] Arkansas Code Annotated section 9–12–315(a) provides that "[a]ll marital property shall be distributed one-half to each party unless the court finds such a division to be inequitable."[11] We will not substitute our judgment on appeal as to the exact interest each party should have but will only decide whether the order is clearly wrong.[12]

The overriding purpose of the property-division statute is to enable the court to make a division of property that is fair and equitable under the circumstances.[13] With respect to the division of property in a divorce case, we review the circuit court's findings of fact and affirm them unless they are clearly erroneous or against the preponderance of the evidence.[14] A circuit court's finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed.[15] In reviewing a circuit court's findings, we defer to the circuit judge's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony.[16]

---

[10] *McCormick v. McCormick*, 2012 Ark. App. 318, at 4, 416 S.W.3d 770, 774 (citing Ark. Code Ann. § 9–12–315 (Repl. 2009)).

[11] *Dew v. Dew*, 2012 Ark. App. 122, at 7, 390 S.W.3d 764, 769.

[12] *Id.* at 8, 390 S.W.3d at 769 (citing *Gilliam v. Gilliam*, 2010 Ark. App. 137, 374 S.W.3d 108).

[13] *McCormick*, *supra* (citing *Baxley v. Baxley*, 86 Ark. App. 200, 167 S.W.3d 158 (2004)).

[14] *Id.* at 4–5, 416 S.W.3d at 774 (citing *Baxley*, *supra*).

[15] *Id.* at 5, 416 S.W.3d at 774.

[16] *Id.*

In the circuit court's order imputing $2,500 income to her bank account on the entry

date of the divorce decree, it stated:

> With respect to the division of the parties' three (3) bank accounts, the Court believes that Judge Laser gave notice to both parties that if money was in the accounts *to get it out*, and the Court states that *there was nothing which prevented the Defendant from reducing the balance in her checking account by payment of bills* between the time of the Court's opinion on February 1, 2013 and the entry of the Divorce Decree on February 8, 2013. However, the Court finds that the Defendant's act of depositing $1,000 and then $1,500 into the account following the entry of the decree was evasive and therefore imputes the account balance on the entry of the Decree to be $2,500.00.[17]

At the time of the divorce decree, there was $127.71 in the account. There was no evidence

or assertions that the money appellant spent from the account was not used for payment of

bills. The evidence before the circuit court was simply that appellant took money from the

account prior to the divorce decree, as was permitted. Because she was permitted to remove

money from the account prior to the entry of the divorce decree, any money appellant

deposited into the account following the entry of the decree could not be evasive and was

irrelevant. Accordingly, the circuit court clearly erred. We therefore reverse on this point

and order division of the $127.71 that was in the account on the entry date of the divorce

decree.

IV. *Child Support Reduction*

Appellant's second argument on appeal is that the circuit court erred in granting

appellee's motion to reduce child support. Appellee requested modification of his child

---

[17] (Emphasis added.)

Cite as 2016 Ark. App. 535

support because he left his job as an employee at Walmart to purchase and run a guns and ammunition store. As a rule, when the amount of child support is at issue, we will not reverse the circuit court absent an abuse of discretion, but we give a trial court's conclusions of law no deference on appeal.[18]

It is axiomatic that a change in circumstances must be shown before a court can modify an order for child support.[19] In addition, the party seeking modification has the burden of showing a change in circumstances.[20] In determining whether there has been a change in circumstances warranting adjustment in support, the court should consider such matters as a change in the income and financial conditions of the parties, the financial conditions of the parties and families, and the child-support chart.[21] The supreme court has made it clear that a finding that a material change in circumstances has occurred is subject to a clearly erroneous standard of review.[22] The question of whether there has been a material change in circumstances is governed by Arkansas Code Annotated section 9-14-107(a)(1), which provides as follows:

> A change in gross income of the payor in an amount equal to or more than twenty percent (20%) or more than one hundred dollars ($100) per month shall constitute a

---

[18] *Metz v. Langston*, 2015 Ark. App. 319, at 9, 463 S.W.3d 305, 311 (citing *Stevenson v. Stevenson*, 2011 Ark. App. 552).

[19] *Troutman v. Troutman*, 2016 Ark. App. 70, at 5, 482 S.W.3d 365, 369 (citing *Hall v. Hall*, 2013 Ark. 330, 429 S.W.3d 219; *Brown v. Brown*, 2014 Ark. App. 455, 440 S.W.3d 361; *Hill v. Kelly*, 368 Ark. 200, 243 S.W.3d 886 (2006)).

[20] *Id.* (citing *Hall*, *supra*).

[21] *Id.* at 5–6, 482 S.W.3d at 369.

[22] *Id.* at 6, 482 S.W.3d at 369.

material change of circumstances sufficient to petition the court for modification of child support according to the family support chart after appropriate deductions.[23]

In determining an appropriate amount of child support, courts are to refer to the family support chart contained in our Administrative Order Number 10, which provides a means of calculating child support based on the payor's net income.[24] Pursuant to Administrative Order No. 10(III)(c), for self-employed payors, the circuit court should first consider the payor's tax returns.[25] If the circuit court determines that the tax returns are unreliable, then it shall make specific findings explaining the basis of its determination and shall then proceed using the net-worth method.[26] Where the trial court relies on the tax record, there is no need for it to consider the net-worth approach.[27]

Appellant relies on *Grady v. Grady* for the holdings that it is appropriate to order child support based on a party's earning capacity rather than on actual earnings;[28] that while there is no specific provision identifying "earning capacity" as an element to be considered when ordering child support, it is a recognized factor under our statutes;[29] that a court may

---

[23] (Repl. 2015).

[24] B*rowning v. Browning,* 2015 Ark. App. 104, at 6, 455 S.W.3d 863, 867 (citing *Cowell v. Long,* 2013 Ark. App. 311).

[25] *Id.* (citing *Tucker v. Office of Child Support Enf't,* 368 Ark. 481, 247 S.W.3d 485 (2007)).

[26] *Id.*

[27] *Id.* (citing *Cowell*, *supra*).

[28] 295 Ark. 94, 97, 747 S.W.2d 77, 78 (1988) (citing 27C C.J.S. *Divorce* § 675 (1986); Annot., Child Support–Excessiveness or Adequacy, 27 A.L.R. 4th 864 (1984)).

[29] *Id.* at 97, 747 S.W.2d at 78.

in proper circumstances impute an income to a spouse according to what could be earned by the use of his or her best efforts to gain employment suitable to his or her capabilities;[30] and that a person's decision to establish their own business or to voluntarily assume new financial burdens cannot take unquestioned precedence over the duty owed to a dependent family.[31] While all true statements, *Grady* and this case are distinguishable on the facts.

In *Grady*, Dale Grady was a licensed attorney, in good health, with the capability of earning income to pay $600 per month for child support, who left his employment with the State to become a solo practitioner without explanation beyond statements that he and Norma Grady were having serious marital problems at the time he resigned from his job.[32] The circuit court had awarded child support based on his income before becoming a solo practitioner rather than based on the $81 per week he was earning at the time of the divorce. There, our supreme court remanded the matter to permit the record to be enlarged on the issue of whether his reasons for leaving gainful employment were proper and not to evade his responsibilities. *Grady* was distinguished in *Grable v. Grable*.[33]

---

[30] *Id*. at 97, 747 S.W.2d at 78–79 (citing *Klinge v. Klinge*, 554 S.W.2d 474 (Mo. 1977)).

[31] *Id*. at 98, 747 S.W.2d at 79 (citing *Weiser v. Weiser*, 362 A.2d 287 (Pa. Super 1976); *Henderson v. Lekvold*, 621 P.2d 505 (N.M. 1980); *Klinge v. Klinge, supra*; *Rohloff v. Rohloff*, 411 N.W.2d 484 (Mich. App. 1987)).

[32] No other statements regarding Dale's reason for leaving his job were detailed in the opinion.

[33] 307 Ark. 410, 821 S.W.2d 16 (1991).

In *Grable*, where Leslie Ann Grable made the same voluntary–change–in–employment argument, our supreme court noted that in *Grady*, it had also "cautioned that a trial court's decision on whether to impute income must be based on the facts and circumstances of each case because situations exist where income reductions are reasonable and justifiable."[34] In *Grable*, James Grable left his employment, according to his testimony alone, because the company was facing bankruptcy; and obtained new employment which was substantially similar, but averaged only $350 to $600 per week. The circuit court had granted James' petition for a reduction of his child support obligation and reduced his obligation from $370 per week to $220 per week plus $30 per week toward arrearages. Our supreme court noted that the circuit court reduced James's child support "[b]ased upon [James's] testimony concerning his weekly income at his current place of employment"[35] and affirmed the circuit court's decision stating that it could not find an abuse of discretion based on the circuit court's "explicit explanation in this case regarding his perception of both the law and the facts necessitating modification of appellee's support obligation[.]"[36]

In the case before us, the facts regarding appellant's earning capacity, like in *Grable*, came from appellee alone. He testified that he left his job at Walmart because he was being harassed and that he was given the option to resign or be demoted to a lower position paying

---

[34] *Id.*, 307 Ark. at 416, 821 S.W.2d at 20 (quoting *Grady*, 295 Ark. at 98, 747 S.W.2d at 79).

[35] *Id.* at 416, 821 S.W.2d at 20.

[36] *Id.* at 417, 821 S.W.2d at 20.

$45,000 per year when he had been making between $85,000 and $100,000 per year when bonuses were included.

The circuit court stated from the bench that it was accepting "$60,000 as the imputed income and that's based not just on the fact of the materials he submitted but also his testimony of what an Assistant Manager [sic] at $45,000." It specifically found that it did not "consider [appellee's voluntary resignation] the same as that he just blew it off." It then stated in its order that appellee would have made $45,000 had he remained at Walmart. The circuit court obviously found appellee's testimony regarding why he left and the amount he would have made had he stayed at Walmart to be credible. In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony.[37]

The circuit court stated from the bench that because appellee no longer worked at Walmart, it did not believe the last couple of years of tax returns would be very useful— therefore unreliable—in determining the proper child support obligation under these facts. It specifically stated in its order that the prior owner, according to documentation attached to appellee's affidavit of means "was netting $60,000 after a payment of a $12,000 salary to himself." However, it noted in its order that higher income might be imputed if looking at appellee's lifestyle. Finally, it stated that the income basis for appellee's child support obligation was just an estimate, noting that setting support in cases where parties are self-

---

[37] *Troutman*, 2016 Ark. App. 70, at 1–2, 482 S.W.3d at 367 (citing *Brown v. Brown*, 2014 Ark. App. 455, 440 S.W.3d 361).

employed is difficult and that it was "particularly difficult to know here since he's just beginning."

In order to reverse a circuit's modification of child support, this court must find an abuse of discretion. An abuse of discretion occurs when discretion is applied thoughtlessly, without due consideration, or improvidently.[38] By accepting $60,000 as appellee's imputed income, the circuit court found a material change in circumstances supporting a reduction of appellee's child support obligation. A finding that a material change in circumstances has occurred is subject to a clearly-erroneous standard of review.[39]

Appellant is essentially arguing that since appellee voluntarily left his job, his child support should not be modified. Section II(b) of Administrative Order No. 10 states "If earnings are reduced as a matter of choice *and* not for reasonable cause, the court may attribute income to a payor up to his or her earning capacity, including consideration of the payor's life-style."[40] There is no rule that voluntarily leaving a job cannot be a basis for a material change of circumstances to support a reduction of one's child support obligation; such a determination is fact- and case-specific. Better stated, voluntarily leaving a job may be a basis for a finding of a material change in circumstances as long as there is a reasonable cause for the departure. It is clear that the circuit court found appellee to be credible in the reasons he gave for leaving his job with Walmart and found the same to be reasonable cause.

---

[38] *Guthrie v. Guthrie*, 2015 Ark. App. 108, at 11, 455 S.W.3d 839, 846 (citing *Stevenson v. Stevenson*, 2011 Ark. App. 552).

[39] *Hill v. Kelly*, 368 Ark. 200, 207, 243 S.W.3d 886, 891 (2006) (citing *Evans v. Tillery*, 361 Ark. 63, 204 S.W.3d 547 (2005)).

[40] (Emphasis added.)

A plain reading of the circuit court's order, in conjunction with its ruling from the bench, prevents this court from finding that the circuit court clearly erred in finding a material change in circumstances or abused its discretion in modifying appellee's child support obligation.

## V.    *Health-Insurance Deduction*

Appellant's third argument on appeal is that the circuit court erred in allowing a reduction of income for child support purposes based on its practice of splitting the cost of the health insurance premium between appellee and G.L.B. when there was no additional cost to appellee to add G.L.B. Section (V)(a)(10) of Administrative Order No. 10 lists insurance as a relevant factor in determining appropriate amounts of child support. Section (V)(b)(1) of Administrative Order No. 10 lists the procurement of health insurance for the child's benefit as an additional factor that may warrant an adjustment to the child support obligation. Section (III)(g) of Administrative Order No. 10 defines the cost of dependent coverage as "the difference between self-only and self with dependents or family coverage or the cost of adding the child(ren) to existing coverage."

In *In re Changes to Arkansas Rules of Civil Procedure*, which appellant relies on for the finding that local rules have been abolished, our supreme court stated

> It is not our intention to subvert the power of the trial courts to preside as they see fit within the universal procedural rules we have established. We presume there will be a need for trial judges to publish administrative orders which will attend to necessary "housekeeping" matters, such as the time and place court shall commence, the duties of the bailiff and the reporter and so on. It is, however, our intention that we will no longer sanction the promulgation by the trial courts of orders which may be characterized as procedural rules which will detract from the ability of any litigant or member of the bar of this state to know the fundamental rules of litigation which

may affect their rights adversely no matter what court of this state they may be before.[41]

It is clear that what the circuit court in this case did in evenly dividing the costs of the health insurance was not to impose its own procedural "local rule," which is prohibited; it made a decision based on what it deemed to be equitable, which is fact- and case-specific. The fact that this was not a procedural matter, but the circuit court's reasonable attempt at an equitable conclusion on the health insurance matter is bolstered by the fact that the amount attributable to appellee as payment for G.L.B.'s health insurance would be reduced if and when appellee's wife gave birth to their pending child, who would be covered under the same policy. As noted by the circuit court with regard to health insurance that covers a number of people, "[Y[ou could say, [G.L.B's] free because once [appellee] is covered, she doesn't cost. On the other hand, you could say he's free because once the child is covered he doesn't cost." The fact remains that the cost for the additional family coverage, which included G.L.B., was $700. We find no error in the circuit court's decision to attribute half, and more likely only a third, of that amount to coverage for G.L.B.

## VI. *Video Camera Removal*

Appellant's fourth argument is that the circuit court erred in refusing to order removal of a video camera from G.L.B.'s room. Again, appellant provides no legal authority for her argument. We have consistently held that we will not consider an argument on appeal that has no citation to authority or convincing legal argument, nor will we research

---

[41] 294 Ark. 664, 666, 742 S.W.2d 551, 552 (1987).

or develop an argument for appellant.[42] It is impossible for our court to conduct a meaningful review in a case where the appellant offers no authority or convincing argument to support allegations of error.[43] However, we do note that no proof or assertion of harm to G.L.B. was ever provided to the court. To quote the circuit court, "[s]o long as [appellee and his wife] are not endangering the child, [appellant] just has to butt out."

## VII.    *Consideration of Tax Refunds as Income*

Appellant's final argument is that the circuit court erred in denying appellant's motion that appellee's tax refunds be considered income for purposes of child support. This argument was initially made in appellant's January 2, 2014 motion to modify child support, almost one year after the circuit court's entry of the parties' divorce decree. However, she raised this issue before both judges below and each judge denied her request.[44] The party seeking modification of a support award has the burden of showing a change in circumstances.[45] Appellant concedes in her brief that appellee "claimed zero dependents for tax purposes *every* year he worked at Wal-Mart."[46] It is unquestioned that appellee worked

---

[42] *Zimmerman v. Pope*, 2015 Ark. App. 499, at 13, 471 S.W.3d 646, 655 (citing *Cooper v. Cooper*, 2013 Ark. App. 748, at 9, 431 S.W.3d 349, 355).

[43] *Id.* (citing *City of Greenbrier v. Roberts*, 354 Ark. 591, 594, 127 S.W.3d 454, 456 (2003)).

[44] The initial judge denied her request because appellee's withholding patterns were known at the time of the divorce decree and the special judge denied her request asserting that it could not retroactively modify support to the time of the divorce decree and appellee no longer worked for Walmart.

[45] *Guthrie*, 2015 Ark. App. 108, at 8, 455 S.W.3d at 845 (citing *Hall v. Hall*, 2013 Ark. 330, 429 S.W.3d 219).

[46] (Emphasis added.)

for Walmart for 28 years. Accordingly, appellant proved no changed circumstances. Though appellant argues that appellee was "purposeful" in seeking extra withholding, the evidence was that appellee simply did what he had always done, even throughout the parties' marriage. This court finds no error.

Affirmed in part; reversed in part.

VIRDEN and HARRISON, JJ., agree.

*Bearden Law Firm, PLLC*, by: *Mike Bearden*, for appellant.

*LaCerra, Dickson, Hoover & Rogers, PLLC*, by: *Lauren White Hoover*, for appellee.