Cite as 2025 Ark. App. 8

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-23-674

| | |
|---|---|
| TONYA M. LEWIS<br><br>APPELLANT<br><br>V.<br><br>PRESTON F. LEWIS<br><br>APPELLEE | Opinion Delivered January 15, 2025<br><br>APPEAL FROM THE SALINE COUNTY CIRCUIT COURT<br>[NO. 63DR-18-952]<br><br>HONORABLE ROBERT HERZFELD, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

Appellant Tonya M. Lewis appeals from the Saline County Circuit Court's order granting appellee Preston Lewis's motion to modify child support after finding that a material change in circumstances had occurred in that Preston's monthly income had decreased. After imputing income to Tonya that was equal to Preston's decreased earnings, the trial court ordered that neither party owed child support. Tonya argues on appeal that the trial court erred by imputing income to her above minimum wage, by expecting her to work forty hours a week while Preston works part time, by not considering Preston's additional income in the form of assets, and by awarding Preston retroactive reimbursement of child support. We find no error and affirm the trial court's decision.

## I. *Background*[1]

Preston and Tonya married in 2007, and their daughter was born in 2012. The parties divorced in May 2019 and were granted joint custody of their minor child (MC) with Preston paying $168 biweekly, "which is the difference in the chart amount of child support for one (1) child based on Father's income of $1936 and Mother's imputed income of $500." The trial court specifically noted in the decree that child support "shall be subject to review when Mother becomes employed." In April 2022, Preston filed a motion to modify child support. In October, he amended the motion to allege that both parties' incomes had changed. Specifically, he asserted that his own income had been reduced to the point that what he is paying Tonya is an overpayment. In April 2023, Preston hired what would be his third attorney, and a hearing was held in July.

At the hearing, Tonya testified that she lives with her mother and stepfather and does not pay any rent or any portion of the utilities or other bills. She said that her mother usually pays her car insurance but that she had paid it most recently and that it is $91.66 a month for six months. She said that she does not have any expenses aside from personal items for her and eleven-year-old MC. Tonya testified that she is a substitute teacher at MC's school

---

[1]Tonya's counsel provided us with a "Statement of the Case" containing a page and a half of the procedural highlights—with no facts. Arkansas Supreme Court Rule 4-2(a)(6), titled *Statement of the Case and the Facts*, provides that the appellant's brief shall contain a concise statement of the case and the facts, which identifies and discusses all material factual and procedural information contained in the record. Information is material if it is essential to understand the case and to decide the issues on appeal. Fortunately, Preston's counsel chose to provide us with twelve and a half pages of the facts gleaned from testimony at the hearing, which is permitted by Rule 4-2(b).

or in MC's school district. She said that substitute teaching pays $85 a day. Tonya testified that in 2019, she earned approximately $3,546 as a substitute teacher. In 2022, she was still a substitute teacher and earned $2,175, and at the time of the 2023 hearing, she had earned $873 by working approximately fifteen days as a substitute teacher. Tonya testified that she is in a long-distance relationship with Eric Schillenberg and that these circumstances make it very difficult for her to work full time. She testified that she is with Eric in New Jersey when she does not have MC. Tonya testified that she has the ability to work forty hours a week but that from 2020 to 2023, she has chosen not to work full time.

Tonya was asked about her qualifications and experience. She said that she has a bachelor's degree in arts and journalism but that she had never used her degree in any job. She said that the last full-time job she had was fourteen years ago when she worked through a nontraditional program as a teacher in the North Little Rock School District teaching ninth-grade Algebra I. Tonya said, however, that she does not have a teaching degree and is not qualified to teach full time. She said that, although she would have earned approximately $32,000 at that teaching job, she held the position for only about three months. Tonya said that she has held jobs for longer terms when she worked in retail sales but that she did not make more than minimum wage.

Tonya also testified that Eric provides her with a credit card to use as she wishes and that she mainly purchases airplane tickets with it. She stated that a round-trip ticket to New Jersey costs around $400 and that she flies to see Eric twice a month. She said that she likely spends on a monthly basis $100 for groceries in Arkansas; $300 for groceries in New Jersey;

$50 on gas; and about $60 for eating at restaurants with MC. Tonya stated that she paid her car insurance with Eric's credit card and that she buys things from Target for her home in Arkansas. She testified that last year, she traveled with Eric to London twice and to Florida to visit Eric's parents.

Tonya said that she and Eric had decided that she would not work full time. She said that, similarly, during MC's lifetime, she had not held down a full-time job and had been a stay-at-home mother. Tonya testified that Preston's $168 biweekly child support provides food, clothing, and school supplies for MC every year. She said that she pays for MC to go to Family Farm Camp every year and that she had paid for art camps in previous years. She said that she also pays for MC to go to the movies and for her face wash and shampoo. Tonya also testified that Eric is very happy to help supplement and provide things for MC.

Preston testified that in May 2019, he earned around $65,000 a year as a speech therapist at Insight Rehabilitation but said that his caseload and billable hours were affected by Medicare changes in October 2019. He said that when the global pandemic struck after those Medicare changes, caseloads were "extremely low" at times, and he was required to service multiple buildings when he typically serviced only one in Benton. Preston stated that his service area then "fanned out" into Hot Springs Village, Hot Springs, Little Rock, and North Little Rock. He said that he considered starting a private practice and began that process in 2021 but that his father, who lived in Clarksville, started experiencing accelerated Alzheimer's symptoms. He decided, instead, to work on an as-needed basis for flexibility in

dealing with his father. Preston stated that he made nearly the same amount of money and that this arrangement worked for a few months.

Preston testified that he then received an offer from a colleague to contract with the Arkansas State Hospital to provide services to adolescents and adults. Preston said that on average there are only about seventeen billable hours a week but that he does work for which he is not compensated. He says that he works Monday through Friday from 8:00 a.m. to 3:00 or 3:30 p.m. and does not travel much, which allows him to be more available for his daughter. Preston stated that his gross monthly pay is $3,240 and that his 2023 year-to-date income is $19,635. On cross-examination, Preston said that he earned $68,304 in 2019; $64,881 in 2020; $34,918 in 2021; and $22,000 in 2022. He stated that he is making significantly less money than he was making in 2019 and 2020 even though his hourly rates have increased because his billable time has decreased by about nine hours a week. Preston insisted that he did not change jobs in order to reduce his child-support obligation. He stated that he now has a better quality of life, more flexibility, less stress, and more time to spend with MC.

Preston said, however, that he is having to withdraw money from his savings account. Preston admitted making a $75,000 deposit in 2020 but said that his uncle had died and that he had helped execute the will, and the rest was probably a gift from his parents. He admitted that, although he had earned about $34,000 in 2021, he deposited over $85,000 into his bank account. He explained that his mother had asked him to "move some money around" because his father, while suffering from Alzheimer's, was "making a lot of claims"

about what he wanted to do with that money. He said that in 2022 when he made only $22,000, he had deposited $80,000 into his bank account but explained that there was a sale on his uncle's home.

Preston said that his mother had died in July 2022 and that his father had died that November. He said that he and his brother sold their parents' home in 2023 and that each made a profit of about $200,000. He said that he put some of his share into an IRA and that there is a joint account containing $92,000 from which they are continuing to pay estate expenses. Preston said that he and his brother have another house in Clarksville that is now sitting empty. He said that he had not looked into potential rental value and that he and his brother were considering a sale. Preston said that his niece had been renting the house for a while and paying the rent to his brother. He said that she had moved out but that her move into a different property had "fallen through" and that she probably would be moving back into the house for a while.

Preston said that his previous attorneys had failed to meet deadlines, had failed to let him know about the service of interrogatories, and had failed to copy him on correspondence with Tonya's counsel. He agreed that Tonya had served her interrogatories in June 2022 but stated that he was not informed of them until November and promptly provided information and documents. Preston testified that he did not believe the delay in getting to court was his fault.

The trial court found that Preston's current annual income is $46,800—or $3,900 a month—and that Preston's job and income had changed due to the COVID-19 pandemic,

6

his parents' failing health and subsequent deaths, and his desire to have a better quality of life and spend more time with MC during his custodial weeks. The trial court found that "these are justifiable reasons for his change in income and it was not made to avoid the payment of child support." The trial court then found that Tonya had the ability to earn $46,800 annually and imputed income of $3,900 a month to her because

> [she] has a Bachelor's Degree, has the ability to work, has worked in the past, presents well and has the ability to work full time as opposed to the limited part time employment she had since the divorce. [Tonya] was expected to gain employment after the divorce and has made the decision to pursue a relationship with an individual that lives out of state. Her decision to pursue a relationship and travel extensively for that relationship has impacted her ability to find gainful employment.

The trial court thus ordered that Preston's child-support obligation would cease effective July 11, 2023, that neither party would pay child support, and that Tonya will repay $1,456 to Preston for four months of child support while the matter was pending.

## II. *Standard of Review*

Our standard of review for an appeal from a child-support order is de novo on the record, and we will not reverse a finding of fact by the trial court unless it is clearly erroneous. *Slayton v. Dill*, 2024 Ark. App. 372, 691 S.W.3d 279. In reviewing a trial court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.* As a rule, when the amount of child support is at issue, we will not reverse the trial court's decision absent an abuse of discretion; however, a trial court's conclusion of law is given no deference on appeal. *Id.*

## III. *Discussion*

7

A.  Imputing Income Above Minimum Wage

Tonya first argues that the trial court abused its discretion in imputing income to her equivalent to an hourly wage of $22.50 when she has never made more than minimum wage in her past jobs. Although she would have earned more than minimum wage in the teaching job she had fourteen years ago, she held that position for only three months. She notes that, although the trial court said in its ruling that teachers "sooner or later" will make $50,000, she is neither licensed nor qualified to teach. The previous job for which she could have earned $32,000 was through a nontraditional teaching program that had her in a high-risk school district before MC's birth. She did not complete the program. Further, although she has a college degree, she has never used her arts and journalism degree in any job she has ever had. Tonya argues that, while she understands that minimum wage may be imputed to her, the trial court should not have imputed *more than* minimum wage.

> Arkansas Supreme Court Administrative Order No. 10(III)(8) provides that
>
> [i]f imputation of income is ordered, the court must take into consideration the specific circumstances of both parents, to the extent known, including such factors as the parents' assets, residence, employment and earnings history, job skills, educational attainment, literacy, age, health, criminal record and other employment barriers, and record of seeking work, as well as the local job market, the availability of employers willing to hire the parent, prevailing earnings level in the local community, and other relevant background factors in the case.

We review the trial court's imputation of income under the abuse-of-discretion standard. *Vice v. Vice*, 2016 Ark. App. 504, 505 S.W.3d 719. An abuse of discretion occurs when discretion is applied thoughtlessly, without due consideration, or improvidently. *Id.*

8

The testimony shows that Tonya has a college degree and a history of employment with teaching experience. The trial court found that Tonya "presents well," and Tonya testified that she is capable of working full time. Moreover, one of the considerations for the trial court when imputing income is the parent's "record of seeking work." The trial court recalled that Tonya had testified at the time of the divorce that she expected to become employed, yet at the child-support-modification hearing, Tonya said that she had no intention of seeking a full-time job. Other considerations are the local job market and level of earnings. The trial court referred to this, but to the extent the trial court may have speculated about the amount of money teachers could earn someday and what college graduates earn, we disregard such conjecture. Nevertheless, we hold that the trial court reached the right result. *Higdon v. Roberts*, 2020 Ark. App. 59, 595 S.W.3d 19.

In our de novo review, we may consider that a minimum-wage job would yield a gross annual income of $22,880; that Tonya had earned an actual gross income of $873 as of July 2023 at her part-time substitute-teaching job but that she had earned four times that amount as recently as 2019 doing that same part-time job; and that virtually all of Tonya's living expenses are paid by her mother and her boyfriend. *See Hayes v. Otto*, 2009 Ark. App. 654, 344 S.W.3d 689 (noting that the payment of personal expenses by third parties can be considered income for purposes of setting child support). Here, Tonya's mother pays for her housing and utilities in Arkansas, and she typically pays all of the other bills, including Tonya's car insurance, which amounts to about $1,100 annually. Eric pays for Tonya's housing in New Jersey and supplies her with a credit card that she may use "as she wishes."

9

Tonya testified to specific charges that total over $15,000 a year and referred to other expenditures for which she did not provide a dollar figure. Indeed, Tonya pays only for personal items for herself and MC. The trial court concluded that Tonya's imputed potential earnings were the equivalent of Preston's reduced earnings, such that neither must pay child support. Considering the specific circumstances of this case, we cannot say that the trial court abused its discretion in imputing more than minimum-wage income to Tonya.

## B. Forty-Hour Work Week

Tonya argues that the trial court abused its discretion in expecting her to work forty hours a week, while Preston is held to only a seventeen-hour work week, or part-time work. She points out that Preston was making $65,000 annually in 2019 at the time of the divorce and that he now has a contract position that is not considered full time. She contends that Preston works only seventeen billable hours each week when he used to work twenty-six billable hours at $39 an hour. He effectively earns $52.94 an hour now, so if he were held to a forty-hour work week as Tonya is, he could earn $110,117.64. She contends that, even if he were held to only his previous twenty-six hours, he would be earning $71,574. Tonya further argues that Preston's reasons for working less no longer exist because the COVID-19 pandemic is over, and both of his parents passed away in 2022.

The trial court determined that Preston credibly testified that his reduced income was not the result of his efforts to reduce his child-support obligation. Although we agree with Tonya that two of Preston's reasons are not applicable now, there were other reasons that Preston sought different employment that resulted in his reduced earnings. We will not

second-guess the trial court's credibility call with respect to Preston's intentions. *See Langston v. Brown*, 2016 Ark. App. 535, 506 S.W.3d 261 (affirming trial court's reduction of child support owed by father after finding that he credibly testified that he had left his high-paying job at Walmart because he was being harassed and had been given the option to resign or be demoted to a lower position that paid less than half of what he had been earning).

There is a rebuttable presumption that the payor and the payee can work full time or earn full-time income, and the court may base its child-support calculation on a determination of potential income that would otherwise ordinarily be available to the parties. Ark. Sup. Ct. Admin. Order No. 10(III)(8). Contrary to Tonya's assertion, Preston is not working seventeen hours a week; rather, he has seventeen billable hours. Preston testified that he works five days a week from 8:00 a.m. to 3:00 or 3:30 p.m. but that his job is a contract position and that he does work for which he is not compensated. Tonya conceded that she is capable of working forty hours a week. She testified that she has *chosen* not to work full time because she prefers to pursue an out-of-state relationship, which makes having a full-time job difficult. The trial court did not abuse its discretion in finding that Tonya failed to rebut the presumption that she is capable of full-time work.

C. Preston's Additional Income

Tonya argues that the trial court failed to consider that Preston owns assets with income potential. She then cites Administrative Order No. 10(III)(8), which provides,

> In addition to determining potential earnings, the court may impute income to any non-income producing assets of either parent, if significant, other than a primary residence or personal property. Examples of such assets are vacation homes

11

(if not maintained as rental property) and idle land. The current rate determined by the court is the rate at which income may be imputed to such nonperforming assets.

Tonya argues that the sale of Preston's parents' home netted him a profit of $200,000 and that he had an inherited IRA worth $335,680.[2] She points to Preston's deposits that far exceeded his income and argues that even his monthly expenses exceeded his monthly income. Tonya, however, does not explain how Administrative Order No. 10(III)(8), involving "nonperforming assets," applies and does not provide any information about the "current rate" to be imputed to a nonperforming asset.

Tonya further argues that the home in Clarksville that was rented to Preston's niece now sits vacant but has income potential. Tonya argues that if Preston and his brother used the home as rental property, Preston would have an additional $8,400 annual income. The language from Administrative Order No. 10 set forth above specifically excludes rental property such that the home would not be a nonperforming or non-income-producing asset. To the extent Tonya suggests that the home could be considered "idle land" given that the home is vacant, the only evidence of the home's monthly rental value came from Tonya's counsel's question on cross-examination of Preston. She asked whether he was aware that rental properties in Clarksville had a potential rental value of $1,400, to which he answered that he was not. We find no error.

D. Retroactive Reimbursement

---

[2]In making this argument, we note that Tonya did not request an increase in Preston's child-support obligation. At the hearing, she argued that his child-support payments should remain the same.

Tonya's final argument is that the trial court erred in ordering her to reimburse Preston for four months of child support. She points out that Preston filed his motion for modification on April 28, 2022, and that she submitted discovery in June. She says that Preston claimed he did not get the discovery from his attorney until November and answered it in December. Tonya argues that Preston had ample time to change attorneys but that he did nothing until his third attorney entered his appearance and moved the matter along. Tonya argues that she uses all of the child support Preston pays for MC's benefit and that the only financial support Preston provides outside of child support is payment of one-half of the cost for tennis, haircuts, and some clothes for MC to wear while at his house. Tonya argues that MC's needs remained the same while the case was pending. She states that, although she was ordered to pay only four months of retroactive reimbursement, she should not have to pay anything given that Preston contributes "little to nothing" toward MC's needs beyond child support.

The trial court noted that it was ordering reimbursement of only four months of child support instead of the twelve months Preston requested. The trial court found that the delay was "not necessarily" caused by Preston but that the case should have been brought to trial in about four months. This was basically a favorable ruling for Tonya and not an abuse of discretion. Although Tonya claims that she should not have been ordered to repay Preston because he pays "little to nothing" other than child support, Preston pays for all of MC's needs every other week when he has custody of her.

Affirmed.

13

KLAPPENBACH, C.J., and BARRETT, J., agree.

*LaCerra, Dickson, Hoover & Rogers, PLLC*, by: *Traci LaCerra*, for appellant.

*The Ballard Firm, P.A.*, by: *Andrew D. Ballard*, for appellee.